**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Janet Burns, Emily Seieroe, Radmila Djordjevic, Ibrahima Mbaye, Hank Lillevoy, Dai'Ja Spaulding, Christopher Amparo, Aminata Sam, and Shameely Azanedo, <br><br> *Plaintiffs,* <br><br> v. <br><br> City of New York; Former Mayor Bill De Blasio; Former NYPD Commissioner Dermot Shea; and Former NYPD Chief of Department Terence Monahan, <br><br> *Defendants.* | **25-cv-01999 (GHW) (RFT)** <br><br> **Plaintiffs Request Oral Argument** |

---

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

**COHEN&GREEN P.L.L.C.**
J. Remy Green
Elena L. Cohen
Nayantara Bhushan
1639 Centre St., Suite 216
Ridgewood, New York 11385
t: (929) 888-9480

**GIDEON ORION OLIVER**
277 Broadway, Suite 1501
New York, NY 10007
t: (718) 783-3682

**WYLIE STECKLOW PLLC**
Wylie Stecklow
Carnegie Hall Tower
152 W. 57th Street, 8th Floor
NYC NY 10019

**BELDOCK LEVINE & HOFFMAN LLP**
Jonathan C. Moore
David B. Rankin
99 Park Avenue, PH/26th Floor
New York, New York 10016

November 14, 2025

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ii

PRELIMINARY STATEMENT ....................................................................................................1

FACTUAL STATEMENT ..............................................................................................................1

      A.      Plaintiffs are assaulted and arrested as part of protest enforcement and subjected to protest-specific arrest processing procedures.................................................................1

          1.     Janet Burns. ...............................................................................................2

          2.     Emily Seieroe. ............................................................................................2

          3.     Radmila Djordjevic. ...................................................................................3

          4.     Ibrahima Mbaye.........................................................................................3

          5.     Hank Lillevoy...............................................................................................4

          6.     Dai'Ja Spaulding. ......................................................................................4

          7.     Aminata Sam. .............................................................................................5

          8.     Christopher Amparo....................................................................................5

          9.     Shameely Azanedo. ....................................................................................6

      B.      History of the *Sow* class action......................................................................7

      C.      Policies and claims at issue in *Sow*.................................................................8

STANDARDS OF REVIEW...........................................................................................................11

ARGUMENT .................................................................................................................................12

    I.    Plaintiffs Were Members of the *Sow* Proposed Class. ........................................13

A.      Plaintiffs are members of Clause A of the *Sow* Proposed Class because they were targeted for First Amendment conduct during the Protests. .................................... 14

    1.      Plaintiffs were engaged in black-letter First Amendment activity. ........................... 14

    2.      Plaintiffs were all at least one of unlawfully detained, arrested without fair warning or ability to disperse, subjected to excessive force, or subjected to unreasonably lengthy and unsafe custodial arrest processing. ........................................................ 14

    3.      Plaintiffs were subjected to that conduct at the Protests. ......................................... 15

B.      Plaintiffs also arguably fit under Clause (b) because they were arrested pursuant to NYPD's protest policies. ............................................................................................... 15

C.      Defendants' arguments about Schedule A locations are wrong. ............................ 17

D.      Defendants' complaints about the scope of the definition of the proposed class are misguided. .............................................................................................................. 17

II.    The Parties Seem to Agree on the Effect of *In re Policing*. ................................................... 21

III.    Defendants' *Monell* Arguments are Misguided. .................................................................. 21

    A.      Defendants misunderstand the underlying violation doctrine. ............................... 21

    B.      Defendants' point on timeliness is either addressed above or barred by clear Second Circuit precedent. ...................................................................................................... 22

    C.      Defendants' Citation-Free Argument About the Non-Party Binding Effect the *In re Policing* Consent Decree is Frivolous. ........................................................................... 23

IV.    The Claims Against de Blasio are Plausible and Require Discovery. ............................... 24

CONCLUSION ................................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. City of New York,*
    466 F. Supp. 2d 545 (S.D.N.Y. 2006)............................................................................16

*Ashcroft v. Iqbal,*
    556 US 662 (2008)............................................................................................................12

*Askins v Doe,*
    727 F3d 248 (2d Cir. 2013) ....................................................................................... 22, 23

*In re AXA Equit. Life Ins. Co. COI Litig.,*
    2020 US Dist LEXIS 145948 (SDNY Aug. 13, 2020)......................................................19

*Bell Atl. Corp. v. Twombly,*
    550 US 544 (2007)............................................................................................................12

*Burley v City of NY,*
    2005 US Dist LEXIS 4439 (SDNY Mar. 23, 2005) ........................................................19

*Cameron v. Tomes,*
    990 F.2d 14 (1st Cir. 1993) ..............................................................................................24

*Camotex, S.R.L. v. Hunt,*
    741 F. Supp. 1086 (S.D.N.Y. 1990) ....................................................................18, 19, 20

*Canada v Gonzales,*
    448 F3d 560 (2d Cir. 2006) ............................................................................................. 15

*Case, et al. v. City of N.Y., et al.,*
    233 F.Supp.3d 372 (SDNY 2017)....................................................................................12

*City of Los Angeles v. Heller,*
    475 US 796 (1986)............................................................................................................21

*Compagnie Financiere v. Merrill Lynch,*
    232 F.3d 153 (2d Cir. 2000)..............................................................................................13

*Coronna v County of Suffolk,*
    2008 US Dist LEXIS 45075 (EDNY June 9, 2008) .................................................. 22, 23

*Crowder v. Lash,*
    687 F.2d 996,1009 (7th Cir. 1982) ..................................................................................24

*Curley v Vil. of Suffern,*
    268 F3d 65 (2d Cir. 2001) ................................................................................. 21, 22

*Defries v Union Pac. R.R. Co.,*
    104 F.4th 1091 (9th Cir. 2024) ........................................................................ 12, 13

*Dinler v City of NY,*
    2012 US Dist LEXIS 141851 (SDNY Sep. 30, 2012) .................................... 8, 11, 16

*Doe v. Pataki,*
    481 F.3d 69 (2d Cir. 2007) ........................................................................................ 13

*Escobar v City of NY,*
    766 F Supp 2d 415 (EDNY 2011) ............................................................................ 22

*Fairfield Sentry Ltd. v Citibank, N.A.,*
    630 F Supp 3d 463 (SDNY 2022) ............................................................................ 15

*Fana v City of NY,*
    2018 US Dist LEXIS 51579 ...................................................................................... 16

*Floyd v City of NY,*
    283 FRD 153 (SDNY 2012) ...................................................................................... 18

*Floyd v City of NY,*
    959 F Supp 2d 540 (SDNY 2013) ............................................................................ 18

*Fortner v. Thomas,*
    983 F.2d 1024 (11th Cir. 1993) ................................................................................ 24

*Haus v. City of New York,*
    03-cv-4915 (RWS)(MHD) 2006 WL 1148680 (S.D.N.Y. April 24, 2006) ............... 16

*Hiser v. Franklin,*
    94 F.3d 1287 (9th Cir. 1996) ................................................................................... 24

*Jones-Bey v. Caso,*
    535 F.2d 1360 (2d Cir. 1976) ................................................................................... 24

*MacNamara v City of NY,*
    275 FRD 125 (SDNY 2011) ...................................................................................... 18

*McBean v City of NY,*
    228 FRD 487 (SDNY 2005) ...................................................................................... 19

*In re New York City Policing During Summer 2020 Demonstrations,*
    20-cv-8924 (SDNY) ......................................................................................... *passim*

*Norris v. Slothouber*,
   718 F.2d 1116 (D.C. Cir. 1983) (per curiam) ...................................................................24

*In re NY City Policing During Summer 2020 Demonstrations*,
   548 F Supp 3d 383 (SDNY 2021) ................................................................................*passim*

*Olukayode v. City of New York*,
   25-cv-01232 (SDNY).......................................................................................................21

*Peoples v Annuci*,
   2021 US Dist LEXIS 60909 (SDNY Mar. 30, 2021) ........................................................13

*Phillips v. City of New York*,
   21-cv-8149 (ALC) (SLC), ECF No. 187 (SDNY 2024) ...................................................21

*Retirement Sys. v YPF Sociedad Anonima*,
   980 F Supp 2d 487 (SDNY 2013) ................................................................................1, 13

*Sawtell v E.I. Du Pont De Nemours & Co.*,
   22 F3d 248 (10th Cir. 1994)............................................................................................12

*Schiller v City of NY*,
   2008 US Dist LEXIS 4253 (SDNY Jan. 23, 2008)...........................................................16

*Shamir v. City of N.Y.*,
   804 F.3d 533 (2d Cir. 2015) ...........................................................................................11

*Sierra v City of NY*,
   2024 US Dist LEXIS 38444 (SDNY Mar. 5, 2024) ......................................................8, 15

*Smith v Pennington*,
   352 F3d 884 (4th Cir. 2003)............................................................................................12

*Tardif v. City of New York*,
   991 F. 3d 394 (2d Cir. 2021)...........................................................................................12

*Ting Qiu Qiu v Shanghai Cuisine, Inc.*,
   2019 US Dist LEXIS 198794 (SDNY Nov. 14, 2019) ......................................................19

*In re Vitamin C Antitrust Litig.*,
   279 FRD ......................................................................................................................23, 24

*Zellner v. Summerlin*,
   494 F.3d 344 (2d Cir. 2007)............................................................................................12

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ...........................................................................................................11

Fed. R. Civ. P. 11 .................................................................................................................... 24

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 11

U.S. Const. amend I ......................................................................................................... *passim*

## PRELIMINARY STATEMENT

Defendants' motion requires the Court to stick its head in the sand and declare that people involved in protests, arrested for protesting, were somehow not targeted for First Amendment conduct. It requires pretending "and/or" means "and." And it threatens to make a mess of *American Pipe* doctrine: If Plaintiffs here are not covered by the class in *Sow*,[1] then no plaintiffs' lawyer would ever counsel anyone to "rely on the pending class action in lieu of filing their own protective lawsuits." *Monroe County Emples.' Retirement Sys. v YPF Sociedad Anonima*, 980 F Supp 2d 487, 491-492 (SDNY 2013).

As shown below, Defendants' motion is on faulty ground on all fronts. Each Plaintiff was arrested or assaulted at a protest specifically identified as the subject of the underlying class action, including by a Court Order. Order, *In re Policing*, ECF No. 663. The *In re Policing* Court itself said the proposed class covered dates between May 2020 and January 2021. So there is no basis to suggest Plaintiffs do not receive *American Pipe* tolling. And Defendants' *Monell* arguments are largely barred by binding Second Circuit precedent. The motion should be denied.

## FACTUAL STATEMENT

As relevant to Defendants' arguments, there are essentially three relevant factual pieces:  (1) what happened to each of the Plaintiffs, (2) the litigation history of the consolidated protest cases, and in particular the class certified in *Sow*, and (3) the policies at issue in *Sow* and alleged here. Unfortunately, Defendants' motion skimps heavily on facts, taking barely a single page to try to describe a 66-page complaint (let alone the background in *Sow*). While the operative complaint provides full detail, those narrower fact issues are described in basic detail below.

### A. Plaintiffs are assaulted and arrested as part of protest enforcement and subjected to protest-specific arrest processing procedures.

---

[1] Terms and cases are defined in the body of the memorandum below.

1

Plaintiffs in this case were all targeted for their First Amendment protected activity during the New York City protest marches in opposition to police misconduct and in support of police reform from May 28, 2020 through no earlier than November, 2020. ECF No. 22 ("SAC") ¶ 25. Each of them attended one of the protests specifically identified as a subject for discovery in the consolidated cases — which included a global class action, called *Sow* — in front of Judge McMahon, in *In re New York City Policing During Summer 2020 Demonstrations*, 20-cv-8924 ("*In re Policing*"). SAC ¶¶ 133; 138; 160; 206; 233; 267; 285; 317; 345; 371. Below are their experiences.

### 1. *Janet Burns.*

On May 29, 2020, Ms. Burns was lawfully present in her capacity as a journalist at a Black Lives Matter protest at and around Barclays Center in Brooklyn, New York – protest number 3 on Amended Schedule A. SAC ¶¶ 136-139. Ms. Burns was wearing her press identification and badge clearly, and all times the lanyard and badge were clearly visible. SAC ¶¶ 139-141. Ms. Burns recorded videos of mass arrests and police brutality for some hours. SAC ¶ 142. And at about 8:00 p.m., NYPD approached protesters and began indiscriminately spraying the individuals' bodies with pepper spray with no warning. SAC ¶¶ 143-145.

An officer then attacked Ms. Burns, aiming the pepper spray at her bare legs, leaving a sticky, orange residue on Ms. Burns' skin and shorts, seemingly attacking her *for* being press. SAC ¶¶ 145-146. Ms. Burns experienced sustained burning pain, redness, and inflammation of the skin which lasted for several days. ¶¶ SAC 149-152.

### 2. *Emily Seieroe.*

On May 30, 2020, Ms. Seieroe joined protest in Union Square, which then marched with to Times Square – protest number 16 on Amended Schedule A. SAC ¶¶ 158-161. In Times Square, Ms. Seiroe recorded NYPD members throwing young Black protester into a puddle of water and arresting him. SAC ¶¶ 165-166. In response to Ms. Seieroe exercising her right to record, Ms. Seieroe was

suddenly surrounded by many members of the NYPD and threatened with violence by a police officer, before being grabbed by multiple members of the NYPD. SAC ¶¶ 167-170. Ms. Seieroe then had a panic attack in while she was in an NYPD van to 1 Police Plaza. SAC ¶¶ 176-182. While she was in 1 Police Plaza, Defendant Fusco deleted the video she had taken of police before her arrest, an obvious First Amendment violation. SAC ¶ 191. Ms. Seieroe was released from police custody at 3:30am. SAC ¶ 196.

### 3. *Radmila Djordjevic.*

On June 2nd, 2020, Ms. Djordjevic participated in a peaceful protest march on the Manhattan Bridge – protest number 35 on Amended Schedule A – walking from Brooklyn to Manhattan. SAC ¶¶ 204-206. NYPD blocked off the bridge. SAC ¶¶ 207-209. Two NYPD officers arrested Ms. Djordjevic near the Manhattan Bridge's Brooklyn exit. SAC ¶ 210. Those officers handcuffed Ms. Djordjevic excessively tightly with flex-cuffs, causing pain in her wrists, and the officers refused to loosen the cuffs even after she complained. SAC ¶ 211-214. The officers also ignored her request for a medical mask while she was taken to the precinct. SAC ¶ 216. She was taken to the 79th Precinct, where she was forced to stand in the hot and crowded front hall for hours without a medical mask while arrestees were processed. SAC ¶¶ 217-218. Ms. Djordjevic was held at the 79th Precinct overnight and released with a summons for a curfew violation after approximately 12 hours in custody, at or around 9:00 a.m., for something that would have been met with a ticket on the street if not for the protest context. SAC ¶ 219.

The charges against Ms. Djordjevic were later dropped. SAC ¶ 220. The tight flex-cuffs caused pain in Ms. Djordjevic's wrists for several days. SAC ¶ 221. Ms. Djordjevic experienced severe psychological distress from the arrest and mistreatment, requiring therapy. SAC ¶ 223.

### 4. *Ibrahima Mbaye.*

On May 30, 2020, Ms. Mbaye participated in a protest and march in midtown Manhattan – protest number 15 on Amended Schedule A. SAC ¶¶ 229-233. Ms. Mbaye and her sister never heard any dispersal orders. SAC ¶ 234. But around 5:00pm, NYPD began making mass arrests. SAC ¶¶ 237-240. An NYPD police officer pushed Ms. Mbaye twice before placing metal handcuffs on her wrists. SAC ¶¶ 241-243. NYPD refused to provide her a medical mask while she was held in an overcrowded cell. SAC ¶¶ 251-256. She was released at 3 a.m., and given two summonses that were later dropped. SAC ¶¶ 257-258.

### 5.  *Hank Lillevoy.*

On May 28, 2020, Mx. Lillevoy was engaged in First Amendment protected activity when they were present at a protest march – protest number 2 on Amended Schedule A[2] – that they joined near Union Square on 14th Street near 4th Avenue. SAC ¶¶ 265-267. At 4:00pm, without prior warning, NYPD police officers suddenly began using forceful crowd control tactics (exactly as detailed in *In re Policing*), assaulting and shoving protestors with their bikes. SAC ¶ 270. One member of the NYPD, violently assaulted Mx. Lillevoy with his NYPD bicycle multiple times, by lifting the bike up at his head height and over his head and shoving and smashing the bicycle upon Mx. Lillevoy's head, torso, legs, and arms. SAC ¶ 271. He then pushed Mx. Lillevoy into – and over – a concrete barrier. SAC ¶ 274. The assault caused substantial bruising upon Mx. Lillevoy's arm and leg. SAC ¶ 275.

### 6.  *Dai'Ja Spaulding.*

On May 30, 2020, Ms. Spaulding was lawfully present at a peaceful protest march in Harlem near 125th Street, protest number 15 on Amended Schedule A. SAC ¶¶ 283-285. When the protesters reached 42nd Street Times Square around 6:00 p.m., they were met by a large group of NYPD officers. SAC ¶¶ 288-289. Without providing Ms. Spaulding or other protesters meaningful notice and an

---

[2] That protest was also the second listed protest in the Sow class settlement — but Mx. Lillevoy was not a member of the as-certified class, because they did not experience a custodial arrested. SAC ¶ 268.

opportunity to disperse, members of the NYPD began to push and corral protesters, including Ms. Spaulding. SAC ¶ 289. As Ms. Spaulding was standing still a member of the NYPD approached her and threw her to the ground before applying zip-tie handcuffs with extreme tightness. SAC ¶¶ 290-291. Multiple NYPD members ignored her repeated requests to loosen the handcuffs. SAC ¶¶ 293-295. After driving Ms. Spaulding along with other arrestees essentially in a circle for 40 minutes, ending up back at Times Square, Ms. Spaulding, was put in a van and taken to 1 Police Plaza, where her flex-cuffs were finally removed. SAC ¶¶ 297-300. The cuffs had cut into her skin, making her wrists bleed. SAC ¶ 301. Around 11:30 p.m., Ms. Spaulding was issued a summons and released from custody. SAC ¶¶ 304-305.

### 7.  *Aminata Sam.*

In the early afternoon of June 5, 2020, Ms. Sam was lawfully present at a peaceful protest near the Brooklyn Museum, protest number 52 on Amended Schedule A. SAC ¶¶ 315-317. NYPD officers began to encircle (or "kettle") protesters into a space, blocking protesters' ability to leave, before beginning mass arrests. SAC ¶¶ 319-321. Two members of the NYPD arrested Ms. Sam and applied the flex-cuffs with extreme tightness, causing significant pain in both of Ms. Sam's hands and wrists. SAC ¶ 322. Ms. Sam complained about the tightness, discomfort and pain caused by the flexcuffs but the officers ignored these complaints of pain. SAC ¶¶ 323-324. Ms. Sam was held inside an NYPD transport vehicle for approximately 2 hours before it left the location. SAC ¶¶ 325-326. Hours later, when the cuffs were removed, she had marks on her wrists from the flex-cuffs that remained for hours. SAC ¶ 331-332.. As a result of this incident, Ms. Sam was forced to leave her position as a private equity tax intern at PriceWaterhouseCoopers. SAC ¶ 335.

### 8.  *Christopher Amparo.*

On May 30, 2020, Mr. Amparo was lawfully present at a protest that began at 125th Street, and proceeded south in Manhattan, protest number 15 on Amended Schedule A. SAC ¶¶ 343-345. In

Times Square, the protestors were met by a large group of NYPD officers. SAC ¶ 347. Without first providing protestors meaningful notice and an opportunity to disperse, members of the NYPD began to push and corral protesters. SAC ¶ 348. Members of the NYPD grabbed Mr. Amparo by the wrists so hard they caused bruising and swelling. SAC ¶ 349. Members of the NYPD threw Mr. Amparo onto the ground and surrounded him, then picked him up and placed excessively tight zip-tie handcuffs on him. SAC ¶¶ 350-351. Mr. Amparo complained about the tightness of the flex-cuffs and requested that they be loosened or replaced, but the NYPD — violating its written policies —ignored him. SAC ¶¶ 352-353. Members of the NYPD then searched Mr. Amparo and found his identification showing he was not an adult, but they placed him in a transport vehicle with adults. SAC ¶¶ 354- 355. After processing at a mass arrest processing location, Mr. Amparo was released. SAC ¶¶ 356-358.

### 9. *Shameely Azanedo.*

On November 5, 2020, Ms. Azanedo was lawfully present at and attending a Black Trans Liberation protest and march near the Stonewall Inn in Manhattan, New York, protest number 79 on Amended Schedule A. SAC ¶¶ 367-371. Members of the NYPD encircled (or "kettled") protesters. SAC ¶ 372. Ms. Azanedo did not hear any orders to disperse. SAC ¶ 373. Ms. Azanedo began to record an officer with her phone. SAC ¶ 376. That officer reacted to Ms. Azanedo's exercising her right to record police by shoving her and pushing her phone into her chest. SAC ¶ 377. He then slammed her into the ground, pinned her to the ground, and repeatedly punched Ms. Azanedo in the stomach and face. SAC ¶¶ 378-379. He then grabbed her arms and placed them behind her back. SAC ¶ 380. Ms. Azanedo did not resist arrest but the officer kept punching her in face. SAC ¶¶ 381-383.

Ms. Azanedo was then transported, with other protesters, to 1 Police Plaza. SAC ¶ 384. At 1 Police Plaza, members of the NYPD deleted the video Ms. Azanedo had taken of Officer Ruiz before returning her phone to her. SAC ¶ 385. Ms. Azanedo was released with a Desk Appearance Ticket, that the DA later declined to prosecute. SAC ¶¶ 386-387. Because she could not bend her legs the

next day, Ms. Azandedo went to the emergency room for treatment. SAC ¶ 388. She suffered significant physical and emotional injuries, including, but not limited to cuts, bruises, inflammation, scars on her shins, scratches and bruising on her face, inability to bend her knees the next day, impact on work performance, and ongoing trouble sleeping. SAC ¶ 389.

### B. History of the *Sow* class action.

As relevant here, in the *Sow* First Amended Complaint ("*Sow* FAC"), there were two class definitions. The parties appear to agree that if Plaintiffs were arguably members of the *Sow* Proposed Class (definition below), they receive tolling, while if they were not, they do not. A history of the relevant dates is in the FAC in paragraph 36, but the upshot is that if Plaintiffs are members of the *Sow* Proposed Class, the claims are timely.

That definition, in two freestanding parts, is as follows:

(a) all persons who were targeted for their First Amendment protected activity including being, inter alia, unlawfully detained and/or arrested without fair warning or ability to disperse, subjected to excessive force, and/or subjected to unreasonably lengthy and unsafe custodial arrest processing during the New York City protest marches in opposition to police misconduct and in support of police reform from May 28, 2020 through no earlier than November, 2020 (the "Protests"); or

(b) all persons who have been or will be unlawfully detained and/or arrested without fair warning or ability to disperse since May 28, 2020, pursuant to the NYPD's policy, practice, and/or custom of, without legal justification, conducting retaliatory arrests and detentions of individuals protesting in opposition to police misconduct and in support of police reform.

*Sow* FAC ¶ 510 ("*Sow* Proposed Class"). Clause (a) essentially boils down to "all persons who were targeted (during the Protests) for their First Amendment activity," while Clause (b) essentially boils down to "all persons who were arrested without fair warning or ability to disperse or detained unlawfully (since May 28, 2020) pursuant to [certain] NYPD policies."

The time-range of this class **explicitly** covered anyone arrested between "May 28, 2020 through no earlier than November, 2020." And the Court later confirmed that the period covered by the class went through (at least) "January 18, 2021." Order, *In re Policing*, ECF No. 663. All Plaintiffs

here fall in that time range, and Defendants offer no basis in the text of the definition for their *ipse dixit* otherwise.

A class was ultimately certified in *Sow*.[3]  But the certified class was narrower, and framed differently:  It covered 18 specified protests, within delineated boundaries. *Sow,* ECF No. 176 ("*Sow* Stipulation and Order") ¶ 32 ("*Sow* Certified Class"). It also limited class membership to people custodially arrested, unlike (for example) the members of the Clause (a) class that would have claims for being subject to force without any arrest. *Id.*

### C.  Policies and claims at issue in *Sow*.[4]

In *Sow*, the policies and practices challenged covered a wide array of conduct. As Judge McMahon described it in largely rejecting the City's motion to dismiss, plaintiffs there "alleged that the NYPD had a policy or custom of using excessive force and mass arrests to effectuate crowd control at First Amendment-protected activities."  *In re NY City Policing During Summer 2020 Demonstrations*, 548 F Supp 3d 383, 396 (SDNY 2021). The policies at issue included, for example, the longstanding practice the City has of "detaining and fully processing people arrested for non-criminal violations who were otherwise eligible to be processed and released with" DATs "based on the fact that they participated in demonstrations." *Sow* FAC ¶ 429(a); see also *Mandal II,* 2007 WL 3376897, at *2. *Accord, e.g., Dinler v City of NY*, 2012 US Dist LEXIS 141851, at *67-69 (SDNY Sep. 30, 2012). It also included claims about, explicitly, "NYPD's Policy and/or Practice of Using Excessive Force to Control the Speech of Protestors."  *Sow* FAC at 61.

---

[3] That settlement came about after at least 10 rounds of discovery sanctions, and after the City's lead lawyer was caught forging documents to cover up discovery misconduct and abruptly fired.

[4] Defendants attempt to distinguish between the *Sow* complaint and the others in *In re Policing. See, e.g.,* DMOL at 12. But the *Sow* FAC — deliberately — "incorporate[d] by reference the factual allegations in the complaints in related cases," including *Payne*, *Wood*, *Sierra*, and *People*. *Sow* FAC at 12 n. 2. So the suggestion that the incidents mentioned in other complaints were absent from the complaint in *Sow* is simply mistaken.

To start with what Defendants appear to dispute, the *Sow* FAC targeted force-only issues — and the proposed class included those subjected only to force (as is clear from the multiple disjunctive uses of "and/or" in clause (a) of the *Sow* Proposed Class). While Defendants falsely claim "the *Sow* class never intended to represent the interests of individuals who were not arrested" (DMOL at 8), that assertion is a facile and bad faith reading of the complaint. Just as the paragraphs Defendants cite discuss arrests, dozens, if not hundreds, of paragraphs in the *Sow* FAC discuss force without any reference to arrest. *See, e.g., Sow* FAC ¶¶ 463 ("Defendants used types and levels of force that were excessive and unnecessary force against the Plaintiffs and other similarly situated protestors.")[5]; 119; 463 ("Defendants used types and levels of force that were excessive and unnecessary force against the Plaintiffs and other similarly situated protestors."); 464-466; 467 ("In many cases, Defendants used types of force, such as deploying pepper spray, that they knew, or should have known, would impact numerous people at one time, and/or cause lasting pain, suffering, and/or injury, without making individualized or otherwise appropriate determinations about whether those uses of force were necessary, justified, or reasonable under the circumstances."); 468-476; 512 (common questions for the class include, without reference to arrest, "Whether Defendants violated the Class members' rights to be free of unreasonable and excessive force"; "Whether Defendants' use of unreasonable and excessive force was the result of a municipal policy or practice;" and "Whether Defendants' use of unreasonable and excessive force violated the First, Fourth and Fourteenth Amendments to the United States Constitution"); 533-536 (stand alone, force-only claim). Plus, most instances referencing force and arrests in the *Sow* FAC use a disjunctive "or" or "and/or" — like, for instance: "in many cases, Defendants apparently permitted, acquiesced in, and/or facilitated the speech and/or other

---

[5] Plaintiffs include this to compare to the string cite in DMOL at 8. If Defendants are correct that paragraphs like the ones they cite show that arrests were covered, the same logic requires that paragraphs that discuss force — without *any* reference to arrest — means force-only claims were covered.

expressive conduct in which Plaintiffs were engaging, before suddenly using force **and/or** making

arrests." *Id.* ¶ 551 (emphasis added).

If the complaint itself were not clear enough, Judge McMahon's rejection of the City's motion

to dismiss the force-only claims across the entire *In re Policing* litigation should put the claim to bed:

> Plaintiffs allege that there exists a widespread practice of trying to control crowds at protests — notably those with political overtones, which plainly implicated Plaintiffs' First Amendment rights — by employing excessive force (whether by baton or bicycle is irrelevant) and by making mass arrests without probable cause …  All three complaints also plead specific instances of other practices — perfectly permissible police practices in the right context, such as the use of batons, bikes, and pepper spray — in an impermissible manner and/or for impermissible purposes during the BLM protests  Again drawing all inferences in favor of the pleader, those allegations are sufficient as well.

> In short, Plaintiffs identify a number of police practices that were allegedly wrongfully used or abused during the BLM protests and pleads facts from which it could be inferred that this was not some 'one off' instance of misuse of these practices, but had been part and parcel of the NYPD's 'arsenal' for dealing with political protests for that past two decades. That sufficiently pleads a custom or policy of using excessive force and making false arrests at large protests throughout New York City.

> […]

> During a June 4 press conference, a reporter asked Mayor de Blasio about a widely circulated video showing NYPD officers hitting protesters with batons at a protest on June 3. When asked if he condoned the officers' behavior, the Mayor denied having seen the video (though it was allegedly shown to him the previous night), and responded: 'It is the nature of New York City and the restraint shown by the NYPD that we're trying to give people extra space, if they do it the right way — if they respect the instructions of the NYPD and do no violence, no harm — don't commit any violence' Defendants insist that this statement shows that the Mayor disapproved of the officers' use of force.

> But it is also plausible to infer from that statement that Mayor de Blasio chose to ignore widely circulated evidence of the alleged use of excessive force by the police, and instead lauded officers for their 'restraint.' Plaintiffs are, for now, entitled to the latter inference.

*In re NY City Policing During Summer 2020 Demonstrations*, 548 F Supp 3d 383, 402-406 (SDNY 2021)

(cleaned up).

Defendants also falsely state the "*Sow* FAC also explicitly states that specific named Plaintiffs

[were all] … arrested."  DMOL at 9. Not true. While many *Sow* Plaintiffs were arrested, Barbara Ross

was brutally assaulted without arrest. *Sow* FAC ¶¶ 208-219.[6] And accordingly, that she was proposed as a class representative — tracking Defendants' own logic (DMOL at 8) — shows that victims of force-without-arrest were intended to be members of the proposed class. Defendants' own reasoning shows that must be so given the allegation that a force-only plaintiff could adequately serve as a representative:  She necessarily had the same claims as the force-only members of the class.

Likewise, the *Sow* complaint targeted a policy of retaliatory arrests based on *perceived* associations:  Targeting people not just because they are "*in*" a protest, but also because they are in "proximity to a perceived" protest. *Sow* FAC ¶ 466. That is, as detailed in Judge Sullivan's opinion in *Dinler*, there is a history of NYPD officers arresting non-protesters — that is, people at protests as "legal observers, as curious bystanders, or for wholly unrelated reasons, such as walking to or from work" — because of a perceived **association** with the protest. 2012 US Dist LEXIS 141851, at *45-46. *Sow* explicitly included such claims, *see, e.g., Sow* FAC ¶¶ 466, 477, 484 (allegations Defendants targeted people "based on their position in or proximity to a perceived group"), and covered those by proposing a class that included arrests or force "during" a protest, rather than "at" one. *Sow* Proposed Class, clause (a).

The SAC and claims here track, largely verbatim for *American Pipe* reasons, the claims in *Sow*.

## STANDARDS OF REVIEW

The applicable federal rules require only that a plaintiff plead "a short and plain statement of the claim" to entitle them to discovery. *See* Fed. R. Civ. P. 8(a)(2); *see also, e.g., Shamir v. City of N.Y.*, 804 F.3d 533, 556 (2d Cir. 2015). Under the familiar standard of review applicable to Defendants' partial motion to dismiss under Rule 12(b)(6), the Court must accept as true all plausibly pleaded

---

[6] Ross was accidentally omitted from paragraph 510, but the prayer for relief is clear *Sow* Plaintiffs sought "an order certifying this action as a class action … , with Plaintiff[] … BARBARA ROSS … as [a] class representative[.]" *Sow* FAC at p. 87, ¶ a. *See also, e.g., id.* ¶¶ 514, 517 (using "Named Plaintiffs," which included Ross).

allegations in the SAC and draw all reasonable inferences therefrom in Plaintiff's favor. *See, e.g., See Case, et al. v. City of N.Y., et al.*, 233 F.Supp.3d 372, 382 (SDNY 2017) (citing cases). If the allegations in the pleadings sufficiently "raise the right to relief above the speculative level," dismissal is inappropriate. *Bell Atl. Corp. v. Twombly*, 550 US 544, 570 (2007). To the extent there are any disputed facts, they are for a jury to decide. *See, e.g., Zellner v. Summerlin*, 494 F.3d 344, 368, 371 (2d Cir. 2007) (citing cases). As long as there is enough factual matter to 'nudge[ plaintiffs'] claims…'across the line from conceivable to plausible,'" the case should proceed to discovery. *Ashcroft v. Iqbal*, 556 US 662, 680 (2008), *quoting Twombly*, 550 U.S. at 570.

As the Second Circuit, and this Court, have recognized, allegations in other complaints or official reports can provide sufficient support for allegations. *See, e.g., In re NY City Policing During Summer 2020 Demonstrations*, 548 F.Supp.3d 383, 401-404 (SDNY 2021).

As far as *American Pipe* tolling is concerned, the question is not whether Plaintiffs *in fact* were members of a proposed class. Instead, "[w]here the scope of the class definition in an initial complaint '*arguably*' includes particular bystander plaintiffs, they remain entitled to *American Pipe* tolling unless and until a court accepts a new definition that unambiguously excludes them." *Defries v Union Pac. R.R. Co.*, 104 F.4th 1091, 1099 (9th Cir. 2024) (emphasis added), *discussing Sawtell v E.I. Du Pont De Nemours & Co.*, 22 F3d 248, 253 (10th Cir. 1994) *and Smith v Pennington*, 352 F3d 884, 895 (4th Cir. 2003).

Finally, Defendants cannot make new arguments on reply. *Tardif v. City of New York*, 991 F. 3d 394, 404 n.7 (2d Cir. 2021).

## **ARGUMENT**

As explained below, Defendants' arguments all fail. "Where the scope of the class definition in an initial complaint '*arguably*' includes particular bystander plaintiffs, they remain entitled to *American Pipe* tolling unless and until a court accepts a new definition that unambiguously excludes

them." *Defries*, 104 F.4th at 1099 (emphasis added). The point of that rule, like "the whole point of *American Pipe*," "is to allow unnamed class members to rely on the pending class action in lieu of filing their own protective lawsuits," and save courts from a deluge of me-too, protective filings. *Monroe County Emples.' Retirement Sys. v YPF Sociedad Anonima*, 980 F Supp 3d 487, 491-492 (SDNY 2013).

Analyzing membership in a proposed class — performed with "arguably" gloss described above — is "subject to the general principles of contract interpretation" or other textual interpretation. *Peoples v Annuci*, 2021 US Dist LEXIS 60909, at *6 (SDNY Mar. 30, 2021). *Cf., e.g., Doe v. Pataki*, 481 F.3d 69, 75 (2d Cir. 2007) (same for consent decrees). So, "[t]he primary objective of a court in interpreting a contract is to give effect to the intent of the parties as revealed by the language of their agreement." *Compagnie Financiere v. Merrill Lynch*, 232 F.3d 153, 157 (2d Cir. 2000).[7]

Since the party's intent that matters is the drafter, counsel herein (the same counsel in *Sow*) can and do clarify the proposed class was intended to include force-only claims.

The parties seem to agree that much of this case turns on membership in the *Sow* Proposed Class.

## I.  Plaintiffs Were Members of the *Sow* Proposed Class.

The heart of Defendants' motion is their assertion that Plaintiffs did not fit in the *Sow* Proposed Class. Defendants immediately fall off track, however, by failing to engage with the actual class proposed — and selectively citing paragraphs in the *Sow* FAC while studiously ignoring the many other paragraphs that undermine their selective reading.

The two potentially relevant definitions here each have a number of clauses, but they boil down to simple-to-apply criteria. First, Clause (a) covers (1) "all persons," (2) targeted "for their First Amendment protected activity," (3) "during … [the] Protests," and provides a non-exhaustive list of

---

[7] Because the *Sow* Proposed Class is not ambiguous, there is no need for parol evidence. But if the Court believes it *is* ambiguous, that ambiguity is a subject for discovery, and Plaintiffs' counsel would testify to the intent.

the kind of targeting might be involved. *Sow* Proposed Class Definition. Second, Clause (b) covers (1) "all persons" who were (2) "arrested" or "detained," (3) without fair warning or ability to disperse, (4) since May 28, 2020, and (5) pursuant to NYPD's policies and practices related to protests.

### A. Plaintiffs are members of Clause A of the *Sow* Proposed Class because they were targeted for First Amendment conduct during the Protests.

Defendants do not appear to dispute Plaintiffs meet the "all persons" criteria. Rather, they argue Plaintiffs were not engaged in First Amendment activity and that some of the protests at issue were not part of the defined "Protests" in the *Sow* Proposed Class.

#### 1. *Plaintiffs were engaged in black-letter First Amendment activity.*

Each Plaintiff was at and participating in a protest when they were arrested or assaulted. Seemingly conceding all other Plaintiffs meet this definition (wisely so given, for example, the deletion of video), Defendants assert only that the arrests of Plaintiffs Djordevic and Sam "had nothing to do with any First Amendment activity." DMOL at 12.

But Ms. Djordevic and Ms. Sam were each "at a protest" — an obvious First Amendment activity. They would not have faced the processing they did without the protest context. Ms. Sam was even kettled, like many of the protesters in *In re Policing,*

No more is required — and indeed, no more was required of the *Sow* Plaintiffs themselves. *Accord, e.g., Sow* FAC ¶¶ 129-420 (basically identical allegations for the individual *Sow* Plaintiffs). And the fact that the allegations are parallel between the Plaintiffs here and the *Sow* Plaintiffs show that the "First Amendment" piece of the proposed class definition covers all Plaintiffs here.

#### 2. *Plaintiffs were all at least one of unlawfully detained, arrested without fair warning or ability to disperse, subjected to excessive force, or subjected to unreasonably lengthy and unsafe custodial arrest processing.*

Clause (a) of the *Sow* Proposed Class then incorporates people subjected to four kinds of conduct: People who were (1) "unlawfully detained," (2) "arrested without fair warning or ability to disperse," (3) "subjected to excessive force," or (4) "subjected to unreasonably lengthy and unsafe custodial

arrest processing." *Id.* It separates each of these with an independent, disjunctive "and/or," and in one case, a comma. *See, e.g., Fairfield Sentry Ltd. v Citibank, N.A.*, 630 F Supp 3d 463, 484 (SDNY 2022) ("repeatedly us[ing] 'and/or' [serves] to show disjunctive meaning"); *Canada v Gonzales*, 448 F3d 560, 568 (2d Cir. 2006) (items "listed sequentially, each separated by a comma, and are phrased in the disjunctive").

Defendants argue that the "*Sow* Proposed Class requires class members to have been arrested." DMOL at 8. But in the broader *In re Policing* cases, the Court already rejected exactly the argument Defendants make here. It addressed substantively identical construction in *Sierra* — "All persons who were detained, arrested, and/or subject to force" — and found force-without-arrest claims were encompassed, even if the force was indirect. *Sierra v City of NY*, 2024 US Dist LEXIS 38444, at *2-3 (SDNY Mar. 5, 2024). Commas and "and/or" separating items in a list are disjunctive, and the City provides no authority otherwise.

Whether by something like estoppel (see Point II and n. 13 below), or just because its reasoning correct, the decision in *Sierra* shows why Defendants' arrest-only reading that ignores the "and/or" and the commas cannot be found in the text of the *Sow* Proposed Class, any more than it could be found in the certified class in *Sierra*.

### 3. *Plaintiffs were subjected to that conduct at the Protests.*

The *Sow* FAC defines "Protests" as "New York City protest marches in opposition to police misconduct and in support of police reform from May 28, 2020 through no earlier than November, 2020." *Sow* Proposed Cass. Defendants largely seem to concede on the *text* of the *Sow* Proposed Class each Plaintiff was arrested or assaulted at (1) a New York City protest march; (2) in opposition to police misconduct and in support of police reform; and (3) those arrests/assaults were between "March 28, 2020" and "November[] 2020." *Id.*

### B. Plaintiffs also arguably fit under Clause (b) because they were arrested pursuant to NYPD's protest policies.

15

Clause (b) covers (1) "all persons" who were (2) "arrested" or "detained," (3) without fair warning or ability to disperse, (4) since May 28, 2020, and (5) pursuant to NYPD's policies and practices related to protests. Defendants do not appear to dispute (1), (2), or (4).

First, for substantially[8] the reasons discussed above, the Plaintiffs that were arrested were arrested without any fair warning or ability to disperse. And even if they *did* defy an order, mere defiance is not enough for probable cause. *Fana v City of NY*, 2018 US Dist LEXIS 51579, at *25.

Second, the SAC alleges Plaintiffs were subjected to the City's protest-related policies. *Sow* challenged these practices directly, as do Plaintiffs here. And confirming Plaintiffs' arrests were under those policies, they were processed in a mass-arrest processing center set up *for* the protests, kettled, assaulted brutally, and the like. These are the exact claims made in *Sow. See generally, In re Policing*, 548 F Supp 3d at 392-417.

In short, Plaintiffs here fit exactly into the *Sow* claims based on the long line of cases about situations in which arrest processing is dragged out because perceived participation in or association with a protest. *Dinler*, 2012 US Dist LEXIS 141851, at *67-69. *See also Allen v. City of New York*, 466 F. Supp. 2d 545, 546 (S.D.N.Y. 2006) (claims that "the police deliberately held [protesters] in custody for an unnecessarily long period of time in order to delay their arraignment in Criminal Court"); *Haus v. City of New York*, 03-cv-4915 (RWS)(MHD) 2006 WL 1148680, *1 (S.D.N.Y. April 24, 2006) (claims the City had police "engage in pre-emptive mass arrests and to subject arrestees to delayed and arduous post-arrest processing"); *Schiller v City of NY*, 2008 US Dist LEXIS 4253, at *4, n 1 (SDNY Jan. 23, 2008) (challenge to the City's "practice of detaining all arrestees, no matter how minor the infraction, rather than issuing summonses on the street" at protests). That is what Clause (b) covers — or at a bare minimum "arguably" covers — and Defendants' arguments otherwise fail.

---

[8] The major difference is that for Clause (b), the "without fair warning" and "ability to disperse" prongs are part of the definition rather than items on a non-exhaustive list.

### C.  Defendants' arguments about Schedule A locations are wrong.

Defendants seem to concede that Plaintiffs Burns and Lillevoy plausibly allege they were arrested at Schedule A locations. DMOL at 10. They contest that Plaintiffs Djordevic, Sam, Amparo, Seieroe, Spaulding, Mbaye, and Azanedo were at a Schedule A location, and that the Schedule A location for Azanedo was one of the Protests. DMOL at 11-13.

Schedule A clarified things that were definitively in play. But — as shown by the subsequent amendment of Schedule A to *add* protests — Schedule A was a discovery tool aimed at reducing the burden on the City in responding to discovery on a rocket docket, where its lawyers were constantly failing to live up to even the "most basic responsibilities of attorneys." Order, *In re Policing,* ECF. No. 598. And Plaintiffs allege all that is necessary:  Participation in a protest march, at the height of the BLM protests in 2020, about police misconduct.

Meanwhile, for Plaintiff Azanedo, the argument that a Black Trans Liberation protest at the historically significant site Stonewall was not connected to police misconduct protests is specious. DMOL at 13-14. Police reform and an end to police misconduct is a necessary part of Black Trans Liberation. Indeed, the location of the protest — at the Stonewall Inn — demonstrates the integral connection between the two:  Stonewall was the site of endless NYPD misconduct and discrimination specifically aimed at trans (and especially Black trans) New Yorkers, and the Stonewall Riots, where those New Yorkers fought back against the rampant police misconduct and corruption that particularly plagued trans, gay, lesbian, queer, and bi New Yorkers marked the beginning of the modern Pride movement.

### D.  Defendants' complaints about the scope of the definition of the proposed class are misguided.

Next, Defendants turn to a claim that the class is somehow too "generalized" to toll anything. DMOL at 14-16. As a starting point, recall that most *American Pipe* tolling occurs when certification is

denied[9] — so merely being insufficient for certification is not enough to lose the benefit of *American Pipe*. But the class here is nothing like that in the case Defendants cite — where there were genuinely "generalized grievances" by an "open-ended group."   DMOL at 14, *quoting Camotex, S.R.L. v. Hunt*, 741 F. Supp. 1086, 1091 (S.D.N.Y. 1990). *Camotex* involved a showing that there was no possible way to determine who was a class member — it was "so amorphous as to make it impossible to 'limit potential class members.'" 741 F. Supp. at 1091.

The City's real objection appears to be a lack of dates. But classes over police conduct without reference to specific dates — and instead with reference to policies — are certified all the time. And recall this is not a motion to certify the class, merely an inquiry into whether the class was so far off that it could not possibly provide the City notice (*accord*, n. 9 above). The first and clearest example in this Court is likely *Floyd v City of NY*, 959 F Supp 2d 540 (SDNY 2013) (final order), albeit for an injunctive class. There, a class was certified covering everyone subjected to the "stop and frisk" policy the City employed. *Floyd v City of NY*, 283 FRD 153, 172 (SDNY 2012). Similarly, and in the damages class context, in the course of the RNC, Judge Sullivan certified damages classes for both conditions of confinement and excessive detention *as policies*, without reference to dates. *MacNamara v City of NY*, 275 FRD 125, 151 (SDNY 2011). And that is because, of course, there was no issue with "individualized grievances" when injuries "derive from a unitary course of conduct by a single system." *Id.* As Judge McMahon explained in *In re Policing*, the claims here flow from exactly such a unitary course of conduct by a single system: the excessive force and mass arrests were "part and parcel of the NYPD's 'arsenal' for dealing with political protests for that past two decades." *In re Policing*, 548

---

[9] Indeed, in a mooted motion in the related *Friedland* case (24-cv-7065), the same lawyer here argued that *American Pipe* **only** applied when class certification was denied: "by the very nature of *American Pipe* tolling, its progeny has focused on tolling the statute of limitations in cases where class certification was **denied** … plaintiffs cannot avail themselves of the American Pipe class action tolling, because the classes in the lawsuits cited by plaintiffs **were** certified." *Id.* ECF no. 26 at 10-11. While that argument is obviously wrong, the fact is that most *American Pipe* tolling happens in the context of a denial. And so, merely having a proposed class that was denied certification is not enough to say the class provides no toll.

F Supp 3d 383, 402-406. Across a variety of doctrinal areas, policy-based class definitions are common, and not inherently problematic at all. *McBean v City of NY*, 228 FRD 487, 490 (SDNY 2005).[10]

Meanwhile, *Camotex* is just nothing like this case. (One of) the underlying class(es) proposed a securities class for all those who purchased or held silver futures, silver bullion, or refined silver in commercial quantities," which was impermissible because it did not sufficiently inform defendants of "the number and generic identity of potential plaintiffs in the action." *Id.* That is, it was just "all those who purchased" silver — not from a certain seller, not in a certain state (or even country), not even in a certain timeframe, meaing differently situated traders — "short traders, long traders, physical traders, consumers, and purchasers of products containing silver" — had necessarily different, "specialized grievances." *Id.* And the claims were expansive antitrust and RICO claims, arising out of a *general* monopoly in the silver market. More, the class *Camotex* relied on for tolling was rejected specifically because it failed to meet notice requirements; but the proposed class was never tested — and indeed, would likely succeed like other policy-based police classes. So, it is hard to see — and Defendants draw no specific analogy beyond the general language — how *Camotex* can be analogous to the clearly defined class here.[11]

Here, for arrest-based class members, obviating any possible claim of amorphousness, the City was able to ultimately produce documents "for each putative Sow class member arrested from May 28, 2020 to January 18, 2021, at locations listed in Schedule A." Order, *In re Policing*, ECF No. 663.

---

[10] Covering class of women "who were subjected to defendants' policy, practice, and custom of strip searching pretrial detainees"; *accord Burley v City of NY*, 2005 US Dist LEXIS 4439, at *17 (SDNY Mar. 23, 2005) (class, as here, of protesters "subjected to the same unconstitutional DAT policy or practice"). *See also, In re AXA Equit. Life Ins. Co. COI Litig.*, 2020 US Dist LEXIS 145948, at *29 (SDNY Aug. 13, 2020) ("the Court certifies a nationwide Policy-Based Claims Class including all individuals who, on or after March 8, 2016, owned AUL II policies that were issued by AXA and subjected to the COI rate increase announced by AXA on or about October 1, 2015"); *Ting Qiu Qiu v Shanghai Cuisine, Inc.*, 2019 US Dist LEXIS 198794, at *7 (SDNY Nov. 14, 2019) (class of workers "subjected to Defendants' common policy of not paying" properly).

[11] Beyond that, as important context, *Camotex* also rejected "tolling by a 'pyramiding' of class actions, that is, allowing successive class actions of which plaintiff was a putative member to toll the statute of limitations." *Id.*

And the City *did* produce such documents for people after June 2020. Moreover, for arrest-based claims, the City has extensive documentation and members of an arrest-based class are frankly simple to ascertain. So there can be no claim the proposed class was too generalized as far as arrest-based class members were concerned.

Similarly, for force-based class members, membership is not amorphous either:  Putative class members were those subjected to force at those protests where the City mounted large responses. Limiting and determining membership is simple — it is only those people subjected to those policies that have been "part and parcel of the NYPD's 'arsenal' for dealing with political protests for that past two decades," including "employing excessive force (whether by baton or bicycle is irrelevant)."  *In re Policing*, 548 F Supp 3d 383, 402-406. Unlike determining who bought silver in any capacity or form, from anyone, ever, figuring out who the City's NYPD assaulted, at protests, between "May 28, 2020 through no earlier than November, 2020" (*Sow* Proposed Class) is just not the kind of amorphous task that *Camotex* describes. That is, as far as limiting membership, it is only those people who actually faced force — and the size of the class is fully in the control of Defendants; they merely need to use less extreme force to control the class's size.[12]

In short, nothing in the *Sow* Proposed Class divides its members into wildly divergent, cross-purposed "specialized grievances."  *Camotex*, 741 F. Supp. at 1091. Their interests all align perfectly: They were unlawfully arrested and assaulted by members of the NYPD, for exercising First Amendment rights. Nor were Defendants (in the course of *In re Policing*) without a remedy if they thought they didn't have notice of what was at issue. They might have moved to strike the class allegations, as the City sometimes does. *See, e.g.,* Motion to Strike Class Action Allegations, *Phillips v.*

---

[12] Because the class also had injunctive, forward-looking claims, there was a continuing membership. But an injunctive class does not have the same limits as a damages class — and Defendants only cite cases about "amorphous" class membership for damages classes.

*City of New York*, 21-cv-8149 (ALC) (SLC), ECF No. 187 (SDNY 2024). Rather, the *Sow* Proposed Class fell well into the mainstream of policy-based class actions against police, and in particular, the NYPD.

## II.  The Parties Seem to Agree on the Effect of *In re Policing*.

Defendants argue that "Plaintiffs' claims against the individual Defendants should be dismissed for the same reasons articulated in the Decision and Order by the Honorable Colleen McMahon in <u>Sow</u>."  DMOL at 16. Because it was not necessarily certain the City would agree this was the case, Plaintiffs included all the policy-level Defendants named in *In re Policing*. With Defendants' seeming agreement that Judge McMahon's decision in *In re Policing* has something like a collateral estoppel effect[13] here, Plaintiffs agree that the Court should dismiss claims against Defendants Shea and Monahan.

## III. Defendants' *Monell* Arguments are Misguided.

Defendants make three arguments on *Monell*:  (1) That with no live "claim against the individual Defendants…, any *Monell* claim must similarly fail,"; (2) that the claims are time-barred; and (3) a bizarre claim that an injunctive consent decree bars future damages claims.

### A.  Defendants misunderstand the underlying violation doctrine.

Defendants' claim that because there is "no ***claim*** against the individual Defendants," it necessarily means that there can be no *Monell* claim. DMOL at 19 (emphasis added). Not so.

As case after case has made clear, Defendants advance here is a basic misunderstanding of the relevant doctrine. *Curley v Vil. of Suffern*, 268 F3d 65, 71 (2d Cir. 2001).  To be sure, it is true that there must be an underlying constitutional ***violation*** for a *Monell* claim to lie. *See generally, City of Los Angeles v. Heller*, 475 US 796, 799 (1986). But there is no rule at all that the people committing that violation

---

[13] In the parallel litigation in *Olukayode v. City of New York* (1:25-cv-01232), on these same issues, the City affirmatively argued *In re Policing* had "collateral estoppel" effect on these issues. *Id.*, ECF No. 27 at 1. Plaintiffs understand the argument to essentially be the same, even if the label is absent here.

must be named, the violation must be reduced to judgment, or that it be pled as a freestanding **claim** at all (and the cases Defendants cite are short-handing the issue).

Explanations of why Defendants' argument fails are most often seen in the context of cases with qualified immunity or unidentified John Doe defendants. Recall that what *Monell* requires is an underlying constitutional **violation** — not a judgment against a specific individual. As the Second Circuit has explained, even dismissal at trial cannot "save a defendant municipality from liability where an individual officer is found not liable because of qualified immunity." *Curley v Vil. of Suffern*, 268 F3d 65, 71 (2d Cir. 2001). Courts thus permit *Monell* claims to continue without individual defendants often, ranging from failure to serve individual Defendants (*Escobar v City of NY*, 766 F Supp 2d 415, 418 (EDNY 2011)), to trial verdicts in favor of individuals (*Curley*, 268 F3d at 71), to naming and failing to identify a John Doe before a statute of limitations (*Coronna v County of Suffolk*, 2008 US Dist LEXIS 45075, at *24 (EDNY June 9, 2008)). And the Second Circuit has been clear these results are correct. *Askins v Doe*, 727 F3d 248, 253 (2d Cir. 2013).

Without belaboring the point, "[w]hile the C[ity] is correct in stating that Plaintiff[s] must prove the underlying constitutional violation by an individual acting under color of state law, it is incorrect in its conclusions that the individual actor must be named as a party in the action and that, because the statute of limitations precludes such individual from being added as a party, the [City] is entitled to [dismissal]." *Id.*

### B. Defendants' point on timeliness is either addressed above or barred by clear Second Circuit precedent.

Defendants' argument that "the underlying constitutional violations are time-barred" is either a category mistake about the underlying violation doctrine (addressed just above) or a point drawing forward the *American Pipe* issues.

For the first, as noted above, the City "is incorrect in its conclusions that the individual actor must be named as a party in the action and that, because the statute of limitations precludes such

individual from being added as a party, the C[ity] is entitled to summary judgment." *Coronna*, 2008 US Dist LEXIS 45075, at *24. In fact, the Second Circuit has directly rejected this argument and reversed a court that followed the City's logic. *See Askins v Doe*, 727 F3d 248, 253 (2d Cir. 2013). It explained:

> "It does not follow [from the underlying violation doctrine], however, that the plaintiff must obtain a *judgment* against the individual tortfeasors in order to establish the liability of the municipality. … where the plaintiff has brought a timely suit against the municipality … **the fact that the suit against the municipal actors was untimely … is irrelevant to the liability of the municipality.**"

*Id.* at 253-254 (italics in original; bold added). Since the City's argument requires the Court to ignore the Second Circuit, the argument necessarily fails.

For the second (the statute as to the City), the parties appear to agree the *American Pipe* analysis is dispositive: If the statute of limitations is tolled as against the City, the *Monell* claims are timely. And the statute was tolled, for the reasons discussed above.

### C. Defendants' Citation-Free Argument About the Non-Party Binding Effect the *In re Policing* Consent Decree is Frivolous.

Finally, Defendants suggest this case is somehow barred by the ongoing, injunctive (non-class) Consent Decree. *See* DMOL at 20. Defendants cite no cases to support this point, presumably because no case supports their argument. And, indeed, binding cases unambiguously bar these arguments.

Defendants argue Plaintiffs damages claims are barred because "Plaintiffs now seek redress in this new action for the very same claims that In Re: 2020 Demonstrations resolved" in the Consent Decree. DMOL at 20. That is not how claim preclusion works. "Every federal court of appeals that has considered the question has held that a class action seeking *only declaratory or injunctive relief* does not bar subsequent individual suits for damages." *In re Vitamin C Antitrust Litig.*, 279 FRD 90,

114 (EDNY 2012) (collecting cases[14]) (emphasis added in *In re Vitamin C*). That rule is long-established in this Circuit. *Jones-Bey v. Caso*, 535 F.2d 1360 (2d Cir. 1976).

Defendants do not cite even a single case[15] — and there is none — suggesting an injunctive consent decree precludes future damages claims. The argument is frivolous and can be ignored.

### IV. <u>The Claims Against de Blasio are Plausible and Require Discovery.</u>

Defendants acknowledge Judge McMahon allowed individual claims against Defendant de Blasio to proceed (except as to the curfew order itself). DMOL at 17; *accord In re Policing,* 548 F Supp 3d at 410. Those claims were about "the strategies employed by the NYPD beginning during the June 3 and June 4 protests," on which he said he "approved the broad strategies and sometimes very specific choices." *In re Policing,* 548 F Supp 3d at 410. "This gets the plaintiffs past a motion to dismiss." *Id.*

---

[14] *See, e.g., Cameron v. Tomes*, 990 F.2d 14, 17 (1st Cir. 1993); *Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996*); Fortner v. Thomas*, 983 F.2d 1024, 1031 (11th Cir. 1993); *Norris v. Slothouber*, 718 F.2d 1116, 1117 (D.C. Cir. 1983) (per curiam); *Crowder v. Lash*, 687 F.2d 996,1009 (7th Cir. 1982).

[15] In *Olukayode*, the City appear to have abandoned this argument after a Rule 11 letter.

## CONCLUSION

For all the reasons discussed above, Plaintiffs respectfully request that the Court deny the pending motion to dismiss, except to the extent that the parties agree to dismissal of claims against Defendants Shea and Monahan.[16]

Dated:    November 13, 2025
          Queens, New York

Respectfully submitted,

**BELDOCK LEVINE & HOFFMAN LLP**

By: _____
Jonathan C. Moore
David B. Rankin

99 Park Avenue, PH/26th Floor
New York, New York 10016
    t: 212-490-0400
    f: 212-277-5880
    e: jmoore@blhny.com
       drankin@blhny.com
       oclark@blhny.com

**WYLIE STECKLOW PLLC**

By: _____
Wylie Stecklow
Wylie Stecklow PLLC
Carnegie Hall Tower
152 W. 57th Street, 8th Floor
NYC NY 10019

**GIDEON ORION OLIVER**

_____
277 Broadway, Suite 1501
New York, NY  10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com

**COHEN&GREEN P.L.L.C.**

By: _____
Elena L. Cohen
J. Remy Green
Nayantara Bhushan

1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
    t: (929) 888-9480
    f: (929) 888-9457
    e: elena@femmelaw.com
       remy@femmelaw.com

---

[16] With permissible exclusions, Plaintiffs certify this memo contains 8,654 words, and accordingly complies with Local Civil Rule 7.1(c).

25

t: 212 566 8000
Ecf@wylielaw.com