UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JANET BURNS, et. al.,

                    Plaintiffs,

      -against-

CITY OF NEW YORK, et al.,

                    Defendants.

---

25-CV-1999 (GHW) (RFT)

**REPORT & RECOMMENDATION**

---

**TO THE HONORABLE GREGORGY H. WOODS, UNITED STATES DISTRICT JUDGE:**

Plaintiffs Janet Burns, Emily Seieroe, Radmila Djordjevic, Ibrahima Mbaye, Dai'Ja Spaulding, Christopher Amparo, Aminata Sam, Shameely Azanedo, and Hank Lillevoy (collectively, "Plaintiffs") bring this Section 1983 and *Monell* suit against Defendants City of New York (the "City") and three former City officials – Former Mayor Bill de Blasio, Former New York Police Department ("NYPD") Commissioner Dermot Shea, and Former NYPD Chief of Department Terence Monahan (together, the "Individual Defendants") – for alleged harms associated with their arrests and detentions by NYPD officers on various dates in 2020. Defendants filed a motion to dismiss the second amended complaint ("SAC"), arguing that Plaintiffs' Section 1983 claims are time barred and that Plaintiffs cannot avail themselves of tolling pursuant to *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974); Defendants go on to argue that even if the claims are not time barred, Plaintiffs' claims should be dismissed for failure adequately to plead any claims against Defendants. For the reasons that follow, I respectfully recommend that Defendants' motion to dismiss should be GRANTED IN PART and DENIED IN PART, as set forth below.

# I.

## FACTUAL BACKGROUND[1]

This report and recommendation summarizes only the facts necessary to address this motion. Between May 28, 2020 and November 5, 2020, Plaintiffs attended protests and marches throughout the City in support of police reform and against police misconduct. On May 28, 2020, Lillevoy attended a protest march that they joined near Union Square. (*See* ECF 22, SAC ¶¶ 265-66.) On May 29, 2020, Burns, a freelance journalist, attended a Black Lives Matter protest near Barclays Center in Brooklyn. (*See id.* ¶¶ 134-41.) Burns recorded videos of the protest and the interactions between the NYPD and the protestors. (*See id.* ¶ 142.)

On May 30, 2020, Seieroe, Mbaye, Spaulding, and Amparo attended different protest marches "in support of police reform and in opposition to police misconduct." (*Id.* ¶¶ 158-59, 230-32, 283-84, 343-44.)[2] Seieroe joined a march at Union Square and marched to Times Square, and Mbaye, Spaulding, and Amparo joined marches that began in Harlem and ended in Midtown West or Times Square. (*See id.* ¶¶ 158, 230-37, 283-87, 343-47.) On June 2, 2020, Djordjevic attended a protest march that started on the Brooklyn side of the Manhattan Bridge and proceeded across the bridge to Manhattan; after reaching Manhattan, she walked back to Brooklyn and tried to leave the bridge. (*See id.* ¶¶ 204-07.) On June 5, 2020, Sam participated in a protest near the Brooklyn Museum. (*See id.* ¶¶ 315.) On November 5, 2020, Azanedo attended a Black Trans Liberation protest and march near the Stonewall Inn in Manhattan. (*See id.* ¶¶ 367-68.)

---

[1]    I draw the facts from the SAC (ECF 22).

[2]    Unless otherwise indicated, this report and recommendation omits internal quotation marks, citations, and alterations from quoted text.

All the Plaintiffs report witnessing and experiencing police misconduct, including being unlawfully detained or arrested without fair warning or the ability to disperse; being subjected to excessive force, including being surrounded, thrown to the ground, punched, hit, pepper sprayed, or shoved by NYPD officers; being targeted for protected First Amendment activity; and being subjected to NYPD policies, practices, and/or customs of conducting unlawful arrests and detentions at certain protests. (*See id.* ¶¶ 153-56, 198-202, 224-28, 259-63, 278-81, 308-12, 337-41, 361-65, 390-94.)

Lillevoy and Burns were not arrested following their participation in the protests but were injured by the police during the protests. (*See id.* ¶¶ 145-50, 271-75.) Seieroe, Djordjevic, Mbaye, Spaulding, Amparo, Sam, and Azanedo were arrested following their participation in protests, transported back to One Police Plaza or a local precinct, and held in custody between two and 12 hours. (*See id.* ¶¶ 173-96, 210-19, 243-57, 291-305, 322-33, 380-86.) Each alleges that he or she was arrested unlawfully without fair warning or the ability to disperse and that he or she was subjected to unreasonably lengthy and unsafe custodial arrest processing. (*See id*. ¶¶ 198, 200, 224, 226, 259, 261, 308, 310, 337, 339, 390, 392.) Seieroe, Djordjevic, Spaulding, Sam, Amparo, and Azanedo also report suffering from physical and non-physical injuries from the arrests. (*See id.* ¶¶ 173-82, 221-23, 336, 360, 389.)

## II.

## PROCEDURAL HISTORY

On January 21, 2021, the original class action complaint was filed in *Sow v. City of New York*, 21-CV-0533 (CM) (GWG) (S.D.N.Y. 2021); Plaintiffs were members of the initial proposed class (the "*Sow* Putative Class"). (*See* ECF 22, SAC ¶ 34 n.6.) On March 6, 2021, a first amended complaint

was filed in *Sow,* and on February 22, 2024, a narrowed class that excluded Plaintiffs was certified (the "Narrowed *Sow* Class"). (*See id.* ¶ 34.)[3]

On July 9, 2021, Judge Colleen McMahon issued a decision and order that resolved motions to dismiss in six consolidated individual and class actions (including *Sow*). *See In re New York City Policing During Summer 2020 Demonstrations,* 548 F. Supp. 3d 383, 401-02 (S.D.N.Y. 2021) ("*2020 Demonstrations*").[4] Judge McMahon held that: (1) the plaintiffs in the consolidated actions, including in *Sow*, had stated claims for municipal liability against the City; (2) the claims against the individual defendants in their official capacities were dismissed as duplicative of the claims against the City; (3) the plaintiffs stated a claim against Monahan in his individual capacity stemming from his personal involvement with protests on May 29, 2020 and June 4, 2020; (4) the plaintiffs stated a claim against de Blasio in his individual capacity stemming from his personal involvement in protests on June 3, 2020 and June 4, 2020; (5) the *Sow* plaintiffs' claims against de Blasio in his individual capacity stemming from his issuance of curfew orders failed to state of claims; and (6) the plaintiffs failed to state a claim against Shea in his individual capacity. *See id*. at 401-18.

On February 22, 2024, Judge McMahon granted the *Sow* plaintiffs' motion for final approval of the class action settlement, final certification of the settlement class, approval of service award payments, approval of the individual plaintiffs' settlements and approval of class counsel's

---

[3]     The Narrowed *Sow* Class was limited to individuals "arrested, or arrested and subjected to force, by NYPD officers during the George Floyd protests" at 18 specified protest sites within certain geographic boundaries on eight days between May 28 and June 4, 2020. Amended Stipulation of Settlement and Order ¶ 32, *Sow*, 21-CV-0533 (S.D.N.Y. Aug. 23, 2023), Dkt. No. 176; *see also* Order Granting Plaintiffs' Motion for Final Approval of Class Action Certification and Settlement ¶ 2, *Sow*, 21-CV-0533 (S.D.N.Y. Feb. 22, 2024), Dkt. No. 196.

[4]     Defendants cite to this decision and order as the *Sow* Decision & Order, ECF No. 116, and Plaintiffs cite the reported citation and use the short form *In re: 2020 Demonstrations*.

attorneys' fees. *See generally* Order Granting Plaintiffs' Motion for Final Approval of Class Action

Settlement, *Sow*, 21-CV-0533 (S.D.N.Y. Feb. 22, 2024), Dkt. No. 196. The settlement was deemed to

have preclusive effect in all pending and future lawsuits brought by class members arising out of

the released claims. *See id.* ¶ 19.

On May 15, 2024, Judge McMahon so ordered a stipulation in *2020 Demonstrations*,

dismissing with prejudice the plaintiffs' claims for damages, noting that the plaintiffs' remaining

claims for injunctive relief survived, and retaining jurisdiction for purposes of enforcing the

settlement agreement. *See* Stipulation and Order, *2020 Demonstrations*, 20-CV-8924 (S.D.N.Y. May

15, 2024), Dkt. No. 1174 (the "Consent Decree").

On March 10, 2025, Plaintiffs and two additional individuals filed their initial complaint

against Defendants in this action, bringing Section 1983 and *Monell* claims for unlawful seizure,

false arrest, and excessive force, in violation of the Fourth and Fourteenth Amendments; violations

of the First Amendment; due process violations under the Fifth and Fourteenth Amendments;

violations of the Equal Protection Clause and claims of selective enforcement under the Fourteenth

Amendment; and state law claims, including violations of the New York State Constitution, assault

and battery, conversion, false imprisonment and unreasonable detention, negligent training and

supervision, and excessive detention (*See* ECF 1, Compl. ¶¶ 439-96.)[5] On March 11, 2025, Plaintiffs

filed the first amended complaint ("FAC"); they refiled two days later to correct a filing error. (*See*

---

[5]    The original complaint also included two additional plaintiffs, Senayda Recinos and David
Rada. (*See* ECF 1, Compl. ¶¶ 27, 30.) Rada was not included as a plaintiff in the FAC and has been
terminated on the docket. (*See generally* ECF 11, FAC; ECF 12, Request for Am. Summons.) Recinos
was omitted from the SAC and has been terminated on the docket. (*See generally*, ECF 22, SAC;
ECF 41, Order.)

*generally* ECF 7, FAC; ECF 11, FAC.) Your Honor referred the case to me for general pretrial supervision, settlement, and all motions requiring a report and recommendation. (*See* ECF 10, Order of Ref.)

Plaintiffs served the FAC on the City on March 14, 2025 and on the Individual Defendants on March 18, 2025. (*See* ECF 14, Mar. 14, 2025 Aff. of Serv; ECF 15, Mar. 18, 2025 Aff. of Serv.)  On April 2, 2025 and May 29, 2025, Defendants requested extensions of time to respond to the FAC. (*See* ECF 16, Apr. 2, 2025 Letter-Mot.; ECF 18, May 29, 2025 Letter-Mot.) I granted both extension requests. (*See* ECF 17, Order; ECF 19, Order.) On July 3, 2025, Defendants filed a letter consenting to Plaintiffs' filing of the SAC. (*See* ECF 20, July 3, 2025 Letter-Mot.) I granted the request (ECF 21), and Plaintiffs filed the SAC on July 23, 2025. (*See* ECF 22, SAC.)

On August 6, 2025, Plaintiffs filed a letter informing the Court pursuant to Local Rule 1.6 of three other related cases pending in this District: (1) *Sow*; (2) *Olukayode v. City of New York*, 25-CV-1232 (PAE); and (3) *Friedland v. City of New York*, 24-CV-7064 (DLC). (*See* ECF 23, Aug. 6, 2025 Letter.) Plaintiffs contended that *Burns*, *Friedland*, and *Olukayode* all raised issues relating to the "reach, meaning, and binding effect" of the certification of the Narrowed *Sow* Class and whether the plaintiffs in the three new cases could rely on *American Pipe* tolling to prevent their respective claims from being dismissed as untimely. (*Id.* at 1-3.) Plaintiffs asked whether Judge McMahon should handle the motions to dismiss or issue an opinion on these topics before the motions to dismiss were decided. (*Id.*)

On August 19, 2025, Defendants moved to stay this case pending resolution of the relatedness issue and indicating their intent to move to dismiss the SAC on the ground, among others, that "[P]laintiffs were not members of the *Sow* prospective class and, thus, cannot avail

themselves of the *American Pipe* tolling of the statute of limitations." (ECF 24, Defs.' Letter-Mot. To Stay at 1-2.) Defendants took the position that there were "overlapping issues" in *Friedland*, *Olukayode*, and this case, "including whether the claims presented in all three cases relate to the claims from and settlement agreement reached in *Sow*." (*Id.* at 2.) Defendants informed the Court that there were motions to dismiss pending in both *Friedland* and *Olukayode*. (*See id.*) On August 21, 2025, I granted Defendants request and stayed the case pending resolution of the relatedness issue. (*See* ECF 25, Order.)

On August 27, 2025, I held a status conference, and I directed the parties to file a joint letter with their proposed next steps by September 10, 2025. (*See* ECF 29, Order.) The joint letter informed the Court that the parties would not stipulate to any agreement regarding the then-pending motions in *Olukayode* and *Friedland* and proposed a briefing schedule for Defendants' anticipated motion to dismiss. (*See* ECF 30, Joint Letter.) I approved the parties' proposed briefing schedule. (*See* ECF 31, Memo Endorsement.)

On October 1, 2025, Defendants filed their motion to dismiss the SAC, supported by a declaration, an exhibit, and a memorandum of law. (*See* ECF 32, Mot. To Dismiss; ECF 33, Decl. of Zoe Reszytniak; ECF 33-1, Exhibit A; ECF 34, Defs.' Mem.) Defendants moved to stay discovery pending the Court's decision on the motion to dismiss (ECF 35). On November 14, 2025, Plaintiffs filed their opposition to the motion to dismiss. (*See* ECF 36, Pls.' Opp.)

On November 18, 2025, I lifted the stay in this case, since the relatedness issue had been resolved by the parties' decision to proceed with separate motions to dismiss in this case, *Friedland*, and *Olukayode*, and I ordered Plaintiffs to respond to Defendants' request to stay discovery. (*See* ECF 37, Order.) On November 26, 2025, Plaintiffs filed their opposition to the

motion to stay discovery. (*See* ECF 38, Pls.' Letter-Resp.) On December 2, 2025, I granted

Defendants' motion to stay discovery pending the Court's decision on this motion to dismiss. (*See*

ECF 39, Order.) On December 5, 2025, Defendants filed their reply in further support of the motion

to dismiss. (*See* ECF 40, Defs.' Reply.)

On September 25, 2025, Judge Denise L. Cote issued an opinion and order in *Friedland,*

granting the defendants' motion to dismiss on the ground that the plaintiffs in *Friedland* were not

members of the *Sow* Putative Class because (1) the *Friedland* second amended complaint did not

link the plaintiffs' arrests to their participation in any protests and (2) the *Friedland* plaintiffs were

not protesting police misconduct and in support of police reform. *See Friedland v. City of New York*,

24-CV-7064 (DLC), 2025 WL 2733359, at *4-5 (S.D.N.Y. Sept. 25, 2025).

On June 9, 2016, Judge Paul A. Engelmayer issued an opinion and order in *Olukayode*,

granting in part and denying in part the defendants' motion to dismiss. *See Olukayode v. City of*

*New York*, No. 25-CV-1232 (PAE), 2026 WL 1661386, at *13-16 (S.D.N.Y. June 9, 2026). Judge

Engelmayer held that the *Sow* Putative Class was limited to "individuals arrested by the NYPD,

without fair warning or ability to disperse, at the New York City BLM protests between May 28 and

the end of November 2020." *Id*. at *8. As such, he dismissed as time barred the claims of all the

plaintiffs who had not been arrested, but he declined to dismiss the claims of any plaintiff who had

been arrested. *See id.* Judge Engelmayer also dismissed all claims against the individual

defendants. He noted that the parties agreed that Judge McMahon's decision in *Sow*, which found

parallel allegations insufficient to state a claim against the Monahan and Shea, had preclusive

effect. *See id.* at *13.  Judge Engelmayer also concluded that the plaintiffs had failed to state a

claim against de Blasio, because there was no allegation that he was personally involved in the

8

NYPD response to any protests beyond those that took place on June 3rd and June 4th. *See id*. And Judge Engelmayer dismissed the official-capacity claims against the individual defendants as duplicative. *See id.*

### III.

### LEGAL STANDARD ON A MOTION TO DISMISS

Judgment on a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted is appropriate when the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678*.* In deciding a Rule 12(b)(6) motion for failure to state a claim, the Court "must accept as true all of the allegations contained in a complaint," but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In evaluating a Rule 12(b)(6) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Extrinsic evidence may not be considered by the court, because "a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). However, an exception exists for extrinsic documents

that are "either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). "[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

## IV.

## **DISCUSSION**

**A.    Timeliness of Plaintiffs' Claims**

1.    *American Pipe* Tolling

The statute of limitations for claims under Section 1983 in New York is three years. *See Hogan v. Fischer,* 738 F.3d 509, 517 (2d Cir. 2013) (applying New York's personal-injury statute of limitations) (citing *Owens v. Okure*, 488 U.S. 235, 249-51 (1989) and N.Y. C.P.L.R. § 214). The limitations period begins to run "when the plaintiff knew or had reason to know of the injury which is the basis of his action, i.e., the alleged injury which – according to the plaintiff – amounts to an infringement of that constitutional right." *Mallet v. N.Y. Dep't of Corr. & Cmty. Supervision*, 126 F.4th 125, 131 (2d Cir. 2025).

Under *American Pipe* tolling, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. 538, 554 (1974). *American Pipe* tolling applies to putative class members who seek to intervene in the original class action as well as those who file their own suits after a ruling on class certification. *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983) ("*Crown*"). "As the Court explained in *Crown*[ ], *American*

10

*Pipe* tolling serves the principal purposes of the class-action procedure by promoting efficiency and economy of litigation and avoiding the needless multiplicity of actions." *Friedland*, 2025 WL 2733359, at *2. Because "[c]lass members are permitted . . . to rely on the class plaintiffs to advance their claims, and the initiation of a class suit gives defendants all the information they need to prepare their defense," *American Pipe* tolling protects the class members' rights. *In re WorldCom Sec. Litig.*, 496 F.3d 245, 254 (2d Cir. 2007). Therefore, to invoke the doctrine of *American Pipe* tolling, a plaintiff must allege "sufficient commonality between the later-filed claims and those in the earlier putative class action, to avoid unfair surprise to the defendants." *Olukayode*, 2026 WL 1661386, at *7 (quoting *Benfield v. Mocatta Metals Corp.*, 26 F.3d 19, 23 (2d Cir. 1994)). A plaintiff shows "sufficient commonality" by alleging that "[b]oth sets of claims . . . involve the same evidence, memories, and witnesses." *Olukayode*, 2026 WL 1661386, at *7 (quoting *United Airlines, Inc. v. McDonald,* 432 U.S. 385, 393 n.14 (1977) and collecting cases).

    2.    <u>Analysis</u>

The alleged wrongful conduct in this case occurred during and shortly after Plaintiffs' participation in protests between May 28, 2020 and November 5, 2020. (*See generally* ECF 22, SAC.) Executive Orders issued by Governor Andrew Cuomo during the COVID-19 Pandemic tolled the statute of limitations from March 20, 2020 through November 3, 2020 (inclusive). *See Nwoye v. Obama*, No. 23-1178-CV, 2024 WL 911753, at *1 (2d Cir. Mar. 4, 2024) (summary order) (citing *McLaughlin v. Snowlift, Inc.*, 214 A.D.3d 720, 721 (2d Dep't 2023)). Accordingly, for Amparo, Lillevoy, Djordjevic, Mbaye, Sam, Seieroe, and Spaulding, who attended protests on or before November 3, 2020 (*see* ECF 22, SAC ¶¶ 343, 265, 204, 230, 283, 315, 158), the Section 1983 claims accrued, at the latest, on November 4, 2020, when the COVID-19 Executive Orders tolling the

statute of limitations ended; absent *American Pipe* tolling, the limitations period for those Plaintiffs would have expired on November 4, 2023. *See Olukayode*, 2026 WL 1661386, at *6. Azanedo's Section 1983 claims, which arise out of a protest on November 5, 2020 (*see* ECF 22, SAC ¶¶ 367-368), accrued on November 5, 2020; absent *American Pipe* tolling, the limitations period would have expired on November 5, 2023. Plaintiffs filed this action on March 10, 2025, 16 months after those deadlines. (*See* ECF 1, Compl.)

Plaintiffs argue that their claims are timely because of *American Pipe* tolling, in that *Sow* tolled their statutes of limitation. (*See* ECF 36, Pls.' Opp. at 12-13.) Defendants argue that Plaintiffs are not included in the *Sow* Putative Class because (1) Lillevoy and Burns were not arrested, (2) Djordjevic and Sam were arrested for curfew violations at locations not referenced in the *Sow* pleadings, and (3) the other Plaintiffs were arrested at protests and locations not referenced in the *Sow* pleadings. (*See* ECF 34, Defs.' Mem. at 10-14.)

The first amended complaint in *Sow* defined the proposed class as:

(a) all persons who were targeted for their First Amendment protected activity including being, inter alia, unlawfully detained and/or arrested without fair warning or ability to disperse, subjected to excessive force, and/or subjected to unreasonably lengthy and unsafe custodial arrest processing during the New York City protest marches in opposition to police misconduct and in support of police reform from May 28, 2020 through no earlier than November, 2020; [and]

(b) all persons who have been or will be unlawfully detained and/or arrested without fair warning or ability to disperse since May 28, 2020, pursuant to the NYPD's policy, practice, and/or custom of, without legal justification, conducting retaliatory arrests and detentions of individuals protesting in opposition to police misconduct and in support of police reform.

First Amended Complaint ¶ 510, *Sow*, 21-CV-0533 (S.D.N.Y. Mar. 6, 2021), Dkt. No. 49. Judges Cote and Engelmayer both concluded that the above-described *Sow* class definition was limited to

individuals who were "arrested without fair warning or ability to disperse" at protests in New York City that were "in opposition to police misconduct and in support of police reform" from May 28 and the end of November 2020. *See Friedland*, 2025 WL 2733359, at *4-5; *Olukayode*, 2026 WL 1661386, at *9-13. Judge Engelmayer also explained that, for *American Pipe* tolling to apply, a plaintiff must allege he or she was (1) arrested, (2) at a protest "in opposition to police misconduct and in support of police reform during the specified period," and (3) that he or she was not given fair warning or an opportunity to disperse. *Olukayode*, 2026 WL 1661386, at *10-13.

The allegations in the SAC in this case are similar to those in *Olukayode*. *See* 2026 WL 1661386, at *1-3. Because Lillevoy and Burns were not arrested, they are not included in the *Sow* Putative Class. *See Friedland*, 2025 WL 2733359, at *4-5; *Olukayode*, 2026 WL 1661386, at *9-13. Accordingly, those Plaintiffs are not entitled to *American Pipe* tolling of their Section 1983 claims, and so I respectfully recommend that Your Honor should dismiss Lillevoy's and Burns' claims as time barred.

As to Seieroe, Djordjevic, Mbaye, Spaulding, Amparo, Sam, and Azanedo (the "Remaining Plaintiffs"), Defendants' argument that those Plaintiffs are not part of the *Sow* Putative Class because the locations of their arrests and the protests they attended were not specifically listed in the *Sow* FAC (*see* ECF 34, Def.'s Mem. at 12-14), is unpersuasive. As Judge Engelmayer explained in *Olukayode*, "*American Pipe* tolling does not require such specificity." 2026 WL 1661386, at *11. "There is no additional condition that the class must have been pled so as to pinpoint more precisely the circumstances of the plaintiff at issue[;] [r]ather, provided the plaintiff falls within the parameters of the putative class in an earlier filed action, *American Pipe* tolling applies." *Id*. (finding that a plaintiff who was arrested at a protest not specifically listed in the *Sow* FAC was nonetheless

13

covered by the *Sow* Putative Class because he was arrested without fair warning or opportunity to disperse at a Black Lives Matter protest in New York City during the specified timeframe). Because Remaining Plaintiffs allegedly were arrested without fair warning and a chance to disperse following their participation in protests in support of police reform and against police misconduct, they fall within the *Sow* Putative Class. *See id.* at *11-13.

Accordingly, for the reasons set forth in Judge Engelmayer's June 9, 2026 opinion in *Olukayode*, I respectfully recommend that Your Honor should dismiss Lillevoy's and Burns' claims as time barred; and that Your Honor should conclude that Remaining Plaintiffs' claims are timely based on *American Pipe* tolling, because Remaining Plaintiffs fall within the *Sow* Putative Class. *See Olukayode*, 2026 WL 1661386, at *10-13. I therefore turn to Defendants' other arguments in support of the motion to dismiss Remaining Plaintiffs' claims against Individual Defendants and the City.

**B.      Remaining Plaintiffs' Claim Against Individual Defendants**

Defendants argue that Remaining Plaintiffs' claims against Individual Defendants in their individual capacities should be dismissed for failure to state a claim. (*See* ECF 34, Def.'s Mem. at 16-17.) Specifically, Defendants argue that Judge McMahon's decision in *2020 Demonstrations*, which dismissed parallel allegations against the individual defendants in *Sow* for failure to state a claim, has preclusive effect. (*See id.* (citing *2020 Demonstrations*, 548 F. Supp. 3d at 409-16.) Plaintiffs agree that Judge McMahon's decision has preclusive effect as to the claims against Shea and Monahan, and Plaintiffs consent to the dismissal of all claims against those two Defendants. (*See* ECF 36, Pls.' Opp. at 21.)

However, Plaintiffs argue that Judge McMahon's decision in *2020 Demonstrations* dismissed claims against de Blasio based on the curfew order only and allowed individual claims to proceed against de Blasio arising out of the NYPD's strategies on June 3 and 4, 2020. (*See id.* at 24.) They reason that Judge McMahon's decision allowing claims arising from the "broad strategies" and "specific choices" de Blasio approved during the June 3 and June 4 protests "gets the plaintiffs past a motion to dismiss." (*Id.* (quoting *2020 Demonstrations*, 548 F. Supp. 3d at 410.) But no Remaining Plaintiff attended a protest on June 3 or June 4, 2020; Remaining Plaintiffs attended protests on May 30, June 2, June 5, and November 5, 2020. *See supra* Part I. Remaining Plaintiffs do not allege that de Blasio was personally involved in the NYPD's response to any of the protests attended by a Remaining Plaintiff. (*See generally* ECF 22, SAC.)

Accordingly, I respectfully recommend that Your Honor should dismiss all claims against Shea, Monahan, and de Blasio in their individual capacities. *See Olukayode*, 2026 WL 1661386, at *13 (dismissing claims against de Blasio in his individual capacity because the FAC contained allegations as to de Blasio's personal involvement in the protests only on June 3 and June 4 and failed to allege that de Blasio was personally involved In the NYPD's response to the protests the plaintiffs attended).

Defendants also argue that the official-capacity claims against Shea, Monahan, and de Blasio must be dismissed as duplicative of the claims against the City. (*See* ECF 34, Defs.' Mem. at 18-19.) Plaintiffs do not address this argument (*see generally* ECF 36, Pls.' Opp.), and so Defendants contend that Plaintiffs have abandoned these claims. (*See* ECF 40, Defs.' Reply at 10.) I respectfully recommend that Your Honor should dismiss the official-capacity claims against Shea, Monahan, and de Blasio as duplicative of Remaining Plaintiffs' claims against the City. *See Phillips v. County of*

*Orange*, 894 F. Supp. 2d 345, 384 n.35 (S.D.N.Y. 2012) ("Within the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant.").

**C.    Remaining Plaintiffs' *Monell* Claim Against the City**

    1.    <u>Legal Standards</u>

To plead a claim under section 1983 against the City, a plaintiff must allege that the deprivation of his constitutionally protected rights resulted from a City "policy, custom, or practice." *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). A municipality such as the City "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* As the Second Circuit explained, to plead a municipal policy or custom:

> the plaintiff need not identify an express rule or regulation. It is sufficient to show, for example, that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law, or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials.

*Patterson*, 375 F.3d at 226. Thus, a plaintiff may plead *Monell* liability in any of four ways:

> (1) a formal policy endorsed by the municipality, (2) actions directed by the government's authorized decisionmakers or those who establish governmental policy, (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware, or (4) a constitutional violation resulting from policymakers' failure to train municipal employees.

*Deferio v. City of Syracuse*, 770 F. App'x 587, 590 (2d Cir. 2019). Besides alleging "the existence of a municipal policy," a plaintiff must plead "a causal connection . . . between the policy and the deprivation of his constitutional rights." *Id.*

2.      Analysis

In addition to the argument that Plaintiffs' claims are untimely, Defendants contend that Plaintiffs' *Monell* claims should be dismissed for the independent reasons that the SAC does not allege that Individual Defendants were involved in the alleged constitutional violations and that the claims are precluded by the Consent Decree in *2020 Demonstrations*. (*See* ECF 34, Defs.' Mem. at 19-20.) Plaintiffs counter that a *Monell* claim may be brought against the City independent of claims against the individuals involved in the underlying constitutional violation; Plaintiff further argues that the Consent Decree in *2020 Demonstrations* does not preclude Remaining Plaintiffs' claims because it resolved a class action seeking only declaratory and injunctive relief and therefore does not preclude subsequent individual suits for damages. (*See* ECF 36, Pls.' Opp, at 23.)

Relying on reports from the New York Attorney General and NGOs that documented accounts of police misconduct at protests throughout the past two decades and during the 2020 Protests, the SAC contains allegations about the NYPD's mistreatment of protesters, including, among other misconduct, corralling and encircling protestors, false arrests, and use of excessive force. (*See* ECF 22, SAC ¶¶ 57-128, 395-450.) The SAC contains allegations relating to the NYPD's policies and practices for responding to protests and pleads that the actions of the NYPD during the 2020 protests were directed by the City and authorized decisionmakers, that the City and the policymakers were aware of the NYPD's policies, and that the NYPD failed to train officers regarding protest policing. (*See id.* ¶¶ 59, 395-481, 522.)

And the SAC contains allegations relating to constitutional violations suffered by Remaining Plaintiffs because of the NYPD's policies and practices for handling protests. For example, Remaining Plaintiffs allege not being given fair warning or an opportunity to disperse once members of the NYPD stopped the protests they were attending. (*See id.* ¶¶ 198, 224, 259, 308, 337, 361, 390.) Each Remaining Plaintiff alleges being subjected to a lengthy period of detention in an overcrowded transport bus and an overcrowded cell, and some of them allege not being offered food or water while in custody. (*See id.* ¶¶ 176-83, 195-96, 215-19, 226, 244-47, 250, 256, 261, 295, 298-99, 303-05, 310, 325-26, 331, 333, 339, 355-58, 363, 384, 386, 392.) Spaulding, Sam, Amparo, and Azanedo allege that when the NYPD stopped the protests they attended, officers pushed and corralled protestors or encircled them so they could not disperse. (*See id*. ¶¶ 289, 319, 348, 372.) Seieroe, Djordjevic, Spaulding, Sam, and Amparo allege that officers applied hand-cuffs or flex-cuffs to their writs with "excessive" or "extreme" tightness and that their complaints of pain and requests to loosen the cuffs went largely ignored for hours, which caused pain, swelling, marks, and in some instances bleeding. (*See id.* ¶¶ 173-75, 211-14, 221, 291-95, 300-01, 322-24, 329-32, 351-53, 360.) Mbaye, Spaulding, Amparo, and Azanedo allege that NYPD officers pushed them, shoved them, and threw or slammed them into the ground, and Azanedo further alleges that she was repeatedly punched by members of the NYPD. (*See id.* ¶¶ 241, 289-90, 348-50, 377-83.)[6]

The SAC therefore adequately pleads deprivation of Remaining Plaintiffs' constitutionally protected rights resulting from "polic[ies], custom[s], or practice[s]" of the City, *Patterson v. Cnty.*

---

[6]    The charges and/or summonses against Djordjevic, Mbaye, Spaulding, Sam, and Azanedo were eventually dropped. (*See id.* ¶¶ 220, 258, 306, 334, 387.)

of Oneida, 375 F.3d 206, 226 (2d Cir. 2004), including the use of excessive force, mass arrests of protestors without fair warning, false arrests, employing crowd control tactics such as pushing and corralling, and lengthy detentions and arrest processing. (See ECF 22, SAC ¶¶ 522-23.) The SAC also alleges that the use of these tactics was "so widespread and pervasive as to constitute de facto policies [that were] accepted, encouraged, condoned, ratified, sanctioned and/or enforced by" the City and that the City failed to train, supervise, and discipline NYPD officers engaging in the alleged wrongful acts. (Id.)

Judges McMahon and Engelmayer found complaints containing similar allegations to those in the SAC and similarly based on reports to have stated claims for municipal liability. See 2020 Demonstrations, 548 F. Supp. 3d at 401-02; Olukayode, 2026 WL 1661386, at *14-16.  As Judge McMahon explained, the allegations:

> identif[ied] a number of police practices that were allegedly wrongfully used or abused during the BLM protests and plead[ed] facts from which it could be inferred that this was not some 'one off' instance of misuse of these practices, but had been part and parcel of the NYPD's arsenal for dealing with political protests for that past two decades.

2020 Demonstrations, 548 F. Supp. 3d at 402. Judge McMahon concluded that the plaintiffs' allegations about the City's employee mismanagement, training, and history of inaction were sufficient to survive a motion to dismiss. See id. at 404-06. Judge Engelmayer similarly found such allegations, including those based on the same reports, to plausibly allege "an official custom or practice of unwarranted, mass arrests of peaceful protestors." Olukayode, 2026 WL 1661386, at *14-15.

Defendants' arguments that the Monell claims should be dismissed if all claims against Individual Defendants are dismissed are unpersuasive. Both Judge McMahon and Judge

19

Engelmayer have held that complaints alleging substantially similar conduct and policies sufficiently pleaded *Monell* claims against the City even though the claims against the individual defendants were dismissed. *See 2020 Demonstrations,* 548 F. Supp. 3d at 401-02 (holding that the *Sow* plaintiffs stated a claim for municipal liability despite dismissing all the *Sow* plaintiffs' claims against the individual defendants); *Olukayode*, 2026 WL 1661386, at *14-16. Because Remaining Plaintiffs plausibly allege that they suffered constitutional violations caused by the City's policies, customs, or practices, their claims are sufficient to plead municipal liability and survive a motion to dismiss. *See 2020 Demonstrations,* 548 F. Supp. 3d at 401-02; *Olukayode*, 2026 WL 1661386, at *14-16.

Finally, the Consent Decree in *2020 Demonstrations*, which provides only declaratory and injunctive relief for members of the class as certified, has no preclusive effect on Remaining Plaintiffs' individual suits for damages, since they were excluded from the Narrowed *Sow* Class. *See Figueroa v. Dean,* No. 99-CV-12457 (RWS), 2002 WL 31426205, at *3 (S.D.N.Y. Oct. 30, 2002) ("It is established in this Circuit, as well as numerous other Circuits, that an individual's claim for money damages [is] not precluded by a class action where the consent judgment did not by its terms dispose of individual damage claims."); *In re Vitamin C Antitrust Litig.,* 279 F.R.D. 90, 114 (E.D.N.Y. 2012) ("[E]very federal court of appeals that has considered the question has held that a class action seeking only declaratory or injunctive relief does not bar subsequent individual suits for damages.").

<u>**CONCLUSION**</u>

For the foregoing reasons, I respectfully recommend that Your Honor should DENY IN PART Defendants' motion to dismiss the SAC, in that the *Monell* claims of Seieroe, Djordjevic, Mbaye,

20

Spaulding, Amparo, Sam, and Azanedo should not be dismissed; and I respectfully recommend that Your Honor should GRANT IN PART Defendants' motion to dismiss the SAC, in that Burns' and Lillevoy's claims should be dismissed as time barred and that the claims of Seieroe, Djordjevic, Mbaye, Spaulding, Amparo, Sam, and Azanedo against Individual Defendants should be dismissed for failure to state a claim. If Your Honor adopts this report and recommendation, the Clerk of Court should be directed to terminate Individual Defendants and Plaintiffs Burns and Lillevoy from the docket and to revise the caption of this case such that Plaintiffs henceforth are identified as Emily Seieroe, Radmila Djordjevic, Ibrahima Mbaye, Dai'Ja Spaulding, Christopher Amparo, Aminata Sam and Shameely Azanedo.

DATED:  July 23, 2026
        New York, NY

Respectfully Submitted,

**ROBYN F. TARNOFSKY**
United States Magistrate Judge

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen days (including weekends and holidays) from service of this report and recommendation to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2). Such objections, and any responses to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections or responses to objections must be addressed to Judge Woods.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF

OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b); *Thomas v. Arn*, 474 U.S. 140, 152 (1985).