**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Janet Burns, Emily Seieroe, Radmila Djordjevic, Ibrahima Mbaye, Hank Lillevoy, Dai'Ja Spaulding, Christopher Amparo, Aminata Sam, and Shameely Azanedo,

*Plaintiffs,*

v.

City of New York; Former Mayor Bill De Blasio; Former NYPD Commissioner Dermot Shea; and Former NYPD Chief of Department Terence Monahan,

*Defendants.*

**25-cv-01999 (GHW) (RFT)**

**Plaintiffs Request Oral Argument**

# PLAINTIFFS' MEMORANDUM OF LAW OBJECTING IN PART TO REPORT & RECOMMENDATION (ECF No. 42)

**COHEN&GREEN P.L.L.C.**
J. Remy Green
Elena L. Cohen
1639 Centre St., Suite 216
Ridgewood, New York 11385
t: (929) 888-9480

**GIDEON ORION OLIVER**
277 Broadway, Suite 1501
New York, NY 10007
t: (718) 783-3682

**WYLIE STECKLOW PLLC**
Wylie Stecklow
Carnegie Hall Tower
152 W. 57th Street, 8th Floor
NYC NY 10019

**BELDOCK LEVINE & HOFFMAN LLP**
Jonathan C. Moore
David B. Rankin
99 Park Avenue, PH/26th Floor
New York, New York 10016

November 16, 2025**6**

## TABLE OF CONTENTS

TABLE OF CONTENTS ........ ii

PRELIMINARY STATEMENT ........ 1

FACTUAL STATEMENT ........ 3

STANDARDS OF REVIEW ........ 4

ARGUMENT ........ 5

I. The RD Plaintiffs Were Members of the *Sow* Proposed Class as a Matter of Law ........ 6

A. The unambiguous text of the class definition includes force-only claims. ........ 7

B. The narrowing of "arrested" from the *Sow* Proposed Class overlooks the fact that the definition uses the word "targeted and also always "arrested" with "detained." ........ 8

C. The R&R improperly read ambiguities in the *Sow* FAC against Plaintiff ........ 10

D. The R&R improperly resolved fact disputes. ........ 11

CONCLUSION ........ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Pipe & Construction Co. v. Utah*,
414 U.S. 538 (1974) .......... 1

*Ashcroft v. Iqbal*,
556 US 662 (2008) .......... 5

*Bell Atl. Corp. v. Twombly*,
550 US 544 (2007) .......... 4, 5

*California v Hodari D.*,
499 US 621 (1991) .......... 9

*Calvary Hosp., Inc. v Kennedy*,
2026 US Dist LEXIS 201205, at *3-4 (SDNY Sep. 3, 2026) .......... 4

*Case, et al. v. City of N.Y.*,
*et al.*, 233 F.Supp.3d 372 (SDNY 2017) .......... 4

*Compagnie Financiere v. Merrill Lynch*,
232 F.3d 153 (2d Cir. 2000) .......... 5

*Defries v Union Pac. R.R. Co.*,
104 F.4th 1091 (9th Cir. 2024) .......... 5

*Doe v. Pataki*,
481 F.3d 69 (2d Cir. 2007) .......... 5

*Karmely v Wertheimer*,
737 F3d 197 (2d Cir 2013) .......... 11

*Logan v City of Pullman*,
392 F Supp 2d 1246 (ED Wash 2005) .......... 9

*Manuel v City of Joliet*,
580 US 357 (2017) .......... 9, 10

*Med. Coll. of Wisconsin Affiliated Hosps., Inc. v United States*,
854 F3d 930 (7th Cir 2017) .......... 9

*Monroe County Emples.' Retirement Sys. v YPF Sociedad Anonima*,
980 F Supp 2d 487 (SDNY 2013) .......... 5, 6, 8, 10

*Nambiar v. Cent. Orthopedic Grp., LLP*,
158 F.4th 349 (2d Cir. 2025) .......... 4

*Nelson v City of Davis*,
685 F3d 867 (9th Cir 2012)....................9

*United States v New York*,
2026 US Dist LEXIS 171720, at *4 (NDNY Aug. 3, 2026)....................2

*Olukayode v City of NY*,
837 F Supp 3d 510 (SDNY 2026).................... *passim*

*Peoples v Annuci*,
2021 US Dist LEXIS 60909, at *6 (SDNY Mar. 30, 2021)....................5

*Pluma v City of NY*,
2015 US Dist LEXIS 48134, at *13-14 (SDNY Mar. 31, 2015)....................9

*Sawtell v E.I. Du Pont De Nemours & Co.*,
22 F3d 248 (10th Cir. 1994)....................5

*Shamir v. City of N.Y.*,
804 F.3d 533 (2d Cir. 2015)....................4

*Smith v Pennington*,
352 F3d 884 (4th Cir 2003)....................5

*Subaru Distribs. Corp. v Subaru of Am., Inc.*,
425 F3d 119 (2d Cir 2005).................... 11

*United States v Simmons*,
560 F3d 98 (2d Cir 2009)....................9

*Zellner v. Summerlin*,
494 F.3d 344 (2d Cir. 2007)....................4

**<u>Statutes</u>**

28 U.S.C. § 636(b)(1)....................4

**<u>Rules</u>**

Fed. R. Civ. P. 8(a)(2)....................4

**PRELIMINARY STATEMENT**

Judge Tarnofsky issued a Report and Recommendation (ECF No. 42, "R&R") recommending the Court deny Defendants' motion to dismiss in relevant part[1] as to Plaintiffs Seieroe, Djordjevic, Mbaye, Spaulding, Amparo, Sam, and Azanedo (the "Recommended-Surviving Plaintiffs," or "RS Plaintiffs"). That part of the decision was clearly correct: Any person who "fall[s] within the *Sow*[[2]] Putative Class" in the First Amended Complaint there ("*Sow* FAC"), but fell outside the ultimately certified class is entitled to tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).

However, it also recommended dismissing claims by Plaintiffs Burns and Lillevoy (the "Recommended-Dismissed Plaintiffs" or "RD Plaintiffs"), reasoning that "[b]ecause Lillevoy and Burns were not arrested, they are not included in the Sow Putative Class." R&R at 13. To do so, the R&R wholly adopted the reasoning in another decision in a parallel case without significant additional analysis — *Olukayode v City of NY*, 837 F Supp 3d 510, 513 (SDNY 2026). But *Olukayode*'s reasoning was flawed. It made a number of mistakes that, essentially, cannot be denied.

For example, *Olukayode* accepted the argument that a protest was "against ICE, not the police," but did so by going beyond party presentation to cite N.Y. Crim. P. Law § 1.20(34) (which was not cited in the complaint either), to interpret the Complaint's use of "police." But while § 1.20(34) "defin[es] 'police officers' as members of certain law enforcement entities ***within New York***" (837 F Supp 3d at 525-26 (emphasis added)), the first line of the First Amended Complaint in the underlying class action says the case originates with how, "[o]n May 25, 2020, ***police*** killed George Floyd" and that lead to "protests against police violence and in support of police accountability … including here in New York City." *Sow,* ECF No. 7 ¶ 1 (emphasis added). If the § 1.20(34) definition was how the

---

[1] Plaintiffs are not objecting to the portion of the R&R that addressed claims "against Individual Defendants." R&R at 21.

[2] *Sow v. City of New York*, 21-cv-533

*Sow* complaint defined "police", it would begin by suggesting that police traveled from New York to Minnesota to murder George Floyd. Meanwhile, ***other*** sections of the criminal procedure law define "police" in a way that ***does*** include ICE. *See, e.g., United States v New York*, 2026 US Dist LEXIS 171720, at *4 (NDNY Aug. 3, 2026). That reading of police shows *Olukayode*'s analysis did not begin on firm footing in reading the proposed class definition in *Sow*.

At issue in this set of objections is whether it was correct to find the *Sow* Proposed Class excluded people who were not subjected to custodial arrests. *Olukayode* acknowledged that the "literal[]" — or, Plaintiffs would suggest, textual — reading of the *Sow* class definition "would encompass anyone" who was subjected force without arrest, it still decided that the *Sow* "proposed class was limited to arrestees." *Olukayode,* 837 F Supp 3d at 521-22. The proposed definition, at least "literally," included people subjected only to force and every instance of "arrested" was accompanied by "or detained," making clear a *custodial* arrest was not the sole focus.

*Olukayode*, on its own facts and as incorporated here, reached another result by using matter from outside the four corners of the definition (and for that matter, the complaint) to rewrite the definition to exclude non-arrestees. This was a flawed approach on a motion to dismiss for multiple reasons: It did not locate an ambiguity in the definition before applying what was essentially parole evidence. It did not evaluated whether the specific uses of force *were* arrests — or at least detentions — as a matter of law. It resolved fact issues against Plaintiffs, taking — contrary to the allegations in the FAC — the City's unsworn assertion it did not understand non-arrestees to be in the class as true. And on the other side of that coin, it weighed evidence pointing multiple directions on a motion to dismiss to divine the intent of the FAC's drafters, including by disregarded the direct evidence of that intent (presented by those very drafters, no less[3]).

---

[3] ECF No. 36 at 13 ("Since the party's intent that matters is the drafter, counsel herein (the same counsel in Sow) can and do clarify the proposed class was intended to include force-only claims").

Plaintiffs believe that this issue could be resolved on the law in their favor, particularly given the aims of *American Pipe* tolling. But going the other direction would both get the law wrong and necessarily implicate facts.

The Court should adopt the R&R insofar as it denies the motion to dismiss as to the RS Plaintiffs, but rejected it as far as the RD Plaintiffs.

## FACTUAL STATEMENT

Plaintiffs believe the R&R's recitation of the facts is largely sufficient and do not dispute it for present purposes.

However, they note the specific facts about the RD Plaintiffs because they are relevant.

On May 29, 2020, Ms. Burns was lawfully present in her capacity as a journalist at a Black Lives Matter protest at and around Barclays Center in Brooklyn, New York. SAC ¶¶ 136-139. Ms. Burns was wearing her press identification and badge clearly, and all times the lanyard and badge were clearly visible. SAC ¶¶ 139-141. Ms. Burns recorded videos of mass arrests and police brutality for some hours. SAC ¶ 142. And at about 8:00 p.m., NYPD approached protesters and began indiscriminately spraying the individuals' bodies with pepper spray with no warning. SAC ¶¶ 143-145. An officer then attacked Ms. Burns, aiming the pepper spray at her bare legs, leaving a sticky, orange residue on Ms. Burns' skin and shorts, seemingly attacking her for being press. SAC ¶¶ 145- 146. Ms. Burns experienced sustained burning pain, redness, and inflammation of the skin which lasted for several days. ¶¶ SAC 149-152.

On May 28, 2020, Mx. Lillevoy was engaged in First Amendment protected activity when they were present at a protest march that they joined near Union Square on 14th Street near 4th Avenue. SAC ¶¶ 265-267. At 4:00pm, without prior warning, NYPD police officers suddenly began using forceful crowd control tactics, assaulting and shoving protestors with their bikes. SAC ¶ 270. One

member of the NYPD, violently assaulted Mx. Lillevoy with his NYPD bicycle multiple times, by lifting the bike up at his head height and over his head and shoving and smashing the bicycle upon Mx. Lillevoy's head, torso, legs, and arms. SAC ¶ 271. He then pushed Mx. Lillevoy into – and over – a concrete barrier. SAC ¶ 274. The assault caused substantial bruising upon Mx. Lillevoy's arm and leg. SAC ¶ 275.

## **STANDARDS OF REVIEW**

As this Court has explained (*Calvary Hosp., Inc. v Kennedy*, 2026 US Dist LEXIS 201205, at *3-4 (SDNY Sep. 3, 2026)), with no objection, the Court reviews an R&R for clear error. *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025); 28 U.S.C. § 636(b)(1). On a proper objection, however, the Court reviews *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also Nambiar*, 158 F.4th at 358-59. And, "[a] proper objection is both timely and specific, meaning it must have 'sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" *Calvary*, 2026 US Dist LEXIS 201205, at *3-4, *quoting Nambiar*, 158 F.4th at 359 (citation omitted).

Accordingly, the substantive standard applied *de novo* here is that applicable federal rules require only that a plaintiff plead "a short and plain statement of the claim" to entitle them to discovery. *See* Fed. R. Civ. P. 8(a)(2); *see also, e.g., Shamir v. City of N.Y.*, 804 F.3d 533, 556 (2d Cir. 2015). Under the familiar standard of review applicable to Defendants' partial motion to dismiss under Rule 12(b)(6), the Court must accept as true all plausibly pleaded allegations in the SAC and draw all reasonable inferences therefrom in Plaintiff's favor. *See, e.g., See Case, et al. v. City of N.Y., et al.*, 233 F.Supp.3d 372, 382 (SDNY 2017) (citing cases). If the allegations in the pleadings sufficiently "raise the right to relief above the speculative level," dismissal is inappropriate. *Bell Atl. Corp. v. Twombly*, 550 US 544, 570 (2007). To the extent there are any disputed facts, they are for a jury to decide. *See, e.g., Zellner v. Summerlin*, 494 F.3d 344, 368, 371 (2d Cir. 2007) (citing cases). As long as there is enough factual matter

to 'nudge[ plaintiffs'] claims…'across the line from conceivable to plausible,'" the case should proceed to discovery. *Ashcroft v. Iqbal*, 556 US 662, 680 (2008), *quoting Twombly*, 550 U.S. at 570.

As far as *American Pipe* tolling is concerned, the question is not whether Plaintiffs *in fact* were members of a proposed class. Instead, "[w]here the scope of the class definition in an initial complaint '***arguably***' includes particular bystander plaintiffs, they remain entitled to *American Pipe* tolling unless and until a court accepts a new definition that unambiguously excludes them." *Defries v Union Pac. R.R. Co.*, 104 F.4th 1091, 1099 (9th Cir. 2024) (emphasis added),[4] *discussing Sawtell v E.I. Du Pont De Nemours & Co.*, 22 F3d 248, 253 (10th Cir. 1994) *and Smith v Pennington*, 352 F3d 884, 895 (4th Cir. 2003).

**ARGUMENT**

Analyzing membership in a proposed class is "subject to the general principles of contract interpretation" or other textual interpretation. *Peoples v Annuci*, 2021 US Dist LEXIS 60909, at *6 (SDNY Mar. 30, 2021). *Cf., e.g., Doe v. Pataki*, 481 F.3d 69, 75 (2d Cir. 2007) (same for consent decrees). So, "[t]he primary objective of a court in interpreting a contract is to give effect to the intent of the parties as revealed by the language of their agreement." *Compagnie Financiere v. Merrill Lynch*, 232 F.3d 153, 157 (2d Cir. 2000).[5]

*American Pipe* tolling is a principle designed first to help Courts manage their dockets: Its goal is expressly to encourage absent class members to "rely on the pending class action in lieu of filing their own protective lawsuits." *Monroe County Emples.' Retirement Sys. v YPF Sociedad Anonima*, 980 F

[4] *Olukayode* appears to disagree that *Defries* meant this when it said it. It reads the case to say "a plaintiff who was earlier included in a putative class must unambiguously be excluded by a revised class definition." *Olukayode*, 837 F Supp 3d at 523, n 6. But that rewrite removes the word "arguably," which *Defries* in turn quotes from the Fourth Circuit's decision in *Smith v Pennington*, 352 F3d 884 (4th Cir 2003). To be sure, it may well be that the Second Circuit ultimately splits from the Fourth. But that does not mean that *Defries* did not adopt an "arguably" standard designed to protect absent class members.

[5] Because the *Sow* Proposed Class is not ambiguous, there is no need for parol evidence. But if the Court believes it *is* ambiguous, that ambiguity is a subject for discovery, and Plaintiffs' counsel would testify to the intent.

Supp 2d 487, 491-492 (SDNY 2013). It weighs a number of interests. Thus, it is important as well that a proposed class provide "fair notice to the defendants for any tolling of the statute of limitations." *Olukayode*, 837 F Supp 3d at 523, n 6. And it is likewise important that the doctrine accounts for the "reality that putative class members have no control over the lead plaintiff's decision to drop or settle a claim." *Monroe*, 980 F Supp 2d at 491.

The fundamental question here is one of fairness and incentives. The definition at issue is this:

> (a) all persons who were targeted for their First Amendment protected activity including being, inter alia, unlawfully detained and/or arrested without fair warning or ability to disperse, subjected to excessive force, and/or subjected to unreasonably lengthy and unsafe custodial arrest processing during the New York City protest marches in opposition to police misconduct and in support of police reform from May 28, 2020 through no earlier than November, 2020 (the "Protests"); or
>
> (b) all persons who have been or will be unlawfully detained and/or arrested without fair warning or ability to disperse since May 28, 2020, pursuant to the NYPD's policy, practice, and/or custom of, without legal justification, conducting retaliatory arrests and detentions of individuals protesting in opposition to police misconduct and in support of police reform.

*Sow* FAC ¶ 510 ("*Sow* Proposed Class"). Faced with that definition, the question is whether unnamed class members and Defendants alike would reasonably think it covered people who were assaulted but not subjected to ***custodial*** arrests.

The R&R's mono-focus on arrests — particularly given that the actual language always included "detention" or "detained" next to "arrest" — was incorrect, and therefore the Court should reject the R&R.

## I. The RD Plaintiffs Were Members of the *Sow* Proposed Class as a Matter of Law.

*Olukayode* reduced the definition above to requiring that, for tolling, "a plaintiff must allege he or she was (1) arrested, (2) at a protest 'in opposition to police misconduct and in support of police

reform during the specified period'" and (3) that he or she was not given fair warning or an opportunity to disperse." R&R at 13, *quoting Olukayode*, 2026 WL 1661386, at *10-13.

It is correct that the protests here satisfy elements (2) and (3): They were in opposition to police misconduct and in support of reform, and there were not fair opportunities to disperse. Accordingly, given that the R&R adopts the reasoning in whole, the question is whether *Olukayode* was correct that the rest of clauses (a) and (b) above can be reduced to "arrested," and if so, if it's technically right to say that the RD Plaintiffs do not meet that criteria.

**A. The unambiguous text of the class definition includes force-only claims.**

To begin, an unambiguous text cannot be made ambiguous by looking outside its four corners. And while a text is read as a whole, the fact that the *Sow* FAC has an understandable *focus* on arrests, that does not by any means render the plain text that includes force-only class members ***ambiguous***.

The *Sow* FAC makes this clear in a number of ways. First, the text: The Proposed Class explicitly includes "all persons who were targeted for their First Amendment protected activity including being, inter alia … subjected to excessive force," with the force clause separated by an "and/or" from arrests/detentions. *Sow* Proposed Class. While *Olukayode* correctly notes that many allegations concern arrests — which is hardly a surprise, given the scale of mass arrests that took place — it ignores the obvious, force-only parts of the proposed common questions. While *Olukayode* says the *Sow* complaint alleges that "that Rule 23's commonality requirement was met because the proposed class had been harmed by the NYPD's 'retaliatory policies of *arresting* protestors'" (*Olukayode*, 837 F Supp 3d at 522 (emphasis added)), this reading glosses over the specific list of common questions in the *Sow* FAC, which ***do not include arrest*** in the first items on the list:

> "a. Whether Defendants violated the Class members' rights to be free of unreasonable and excessive force;
>
> b. Whether Defendants' use of unreasonable and excessive force was the result of a municipal policy or practice;

> c. Whether Defendants' use of unreasonable and excessive force violated the First, Fourth and Fourteenth Amendments to the United States Constitution; …"

*Sow* FAC ¶ 512. The list questions driving commonality ***then*** moves on the separately list similar, separate questions as to arrests, and then detentions. *Id.* ¶¶ 512(d)-(g) (arrests); 512(h)-(i) (detentions). And then, contrary to the paragraph *Olukayode* identifies (837 F Supp 3d at 522), the common question list ***separately*** asks "Whether Defendants retaliated against Class Members for engaging in speech and/or conduct protected by the First Amendment" ***without*** reference to arrests. *Sow* FAC ¶ 512(j). The fact that one paragraph, in one place discusses force in connection with arrests does not mean that the paragraphs elsewhere discussing force alone do not exist.

And consider what a putative class member — who was not subjected to a custodial arrest, but detained (see below) in the legal sense and subjected to force — would understand looking at this definition. It is hard to see what would let that person know they needed to "fil[e] their own protective lawsuits." *Monroe*, 980 F Supp 2d at 491-492. That is, the pending proposed class action "literally" said it would cover their non-custodial arrest, force claims (*Olukayode*, 837 F Supp 3d at 521-522), and the first three proposed questions the *Sow* FAC said it would resolve were solely about force — with no reference to arrests. *Sow* FAC ¶¶ 512(a)-(c). With that language, why would that person have thought they needed to file an action to protect their claims? And indeed, a layperson, deciding whether they need to file a protective action, should not need to guess at what a judge might later decide is the right holistic reading of a hundred-page, dense legal document. And putative class counsel as well would be in a position of advising a flood of protective actions if contacted, to avoid potential malpractice claims.

### B. The narrowing of "arrested" from the *Sow* Proposed Class overlooks the fact that the definition uses the word "targeted and also always "arrested" with "detained."

In reducing "targeted for their First Amendment protected activity including being, inter alia, unlawfully detained and/or arrested without fair warning or ability to disperse, subjected to excessive

force, and/or subjected to unreasonably lengthy and unsafe custodial arrest processing" to "arrested," *Olukayode* cut out that "arrested" was only one of the "includ[ed]" ways of being "targeted for … First Amendment … activity" and that "arrested" was always paired with "detained."

As an initial matter, if the definition were meant to only apply to people arrested — or for that matter, subjected to custodial arrests — it could have just as easily begun: "[***custodially arrested***] for their First Amendment protected activity including being…" The fact that the definition uses a different word than arrested to begin is, as a matter of textual interpretation, requires a "presumption that different words mean different things." *Med. Coll. of Wisconsin Affiliated Hosps., Inc. v United States*, 854 F3d 930, 933 (7th Cir 2017). The same principle applies to the fact that the definition applies not just to people "arrested, but to people "***detained*** and/or arrested." *Sow* Proposed Class (emphasis added).

And the Supreme Court has also been clear that "an arrest is effected by the slightest application of physical force." *California v Hodari D*., 499 US 621, 625 (1991). That is, a "'seizure' occur[s] at the moment the [subject is] physically restrained." *United States v Simmons*, 560 F3d 98, 106 (2d Cir 2009).

With that, return to the facts about the RD Plaintiffs.

Burns was sprayed indiscriminately with pepper spray. Someone is, as a matter of law, "detained — which is to say, seized" (*Manuel v City of Joliet*, 580 US 357, 364 (2017) (alterations accepted) — when they are pepper sprayed. Indeed, one case is almost directly on point in finding that a journalist covering a crowd that was pepper sprayed is seized. *Pluma v City of NY*, 2015 US Dist LEXIS 48134, at *13-14 (SDNY Mar. 31, 2015), *citing Nelson v City of Davis*, 685 F3d 867, 877 (9th Cir 2012) and *Logan v City of Pullman*, 392 F Supp 2d 1246, 1260 (ED Wash 2005).

Likewise, Lillevoy was seized when they were hit with a bike multiple times and then shoved into and over a concrete barrier. That is, they were physically struck with a bike (itself a seizure), then

seized and shoved over a barrier, against their will. And the purpose of this was to begin effecting mass arrests at that protest. They were, unquestionably, detained.

Since the Supreme Court had, at the time of *Sow* FAC, defined "detained" as including being "seized" (*Manuel*, 580 US at 364), and there was significant caselaw holding that targeted pepper spray is a seizure, the complaint certainly placed Defendants on fair notice that Burns and Lillevoy were within the scope of a proposed class. Of course, Defendants were not without remedy: They could move to strike a definition as too broad, press for a fast schedule on certification, and so on. But then consider the other side of the equation: How was Burns to know that a later Court might decide that the class definition would not actually cover the "detained" language, or for that matter, the "subjected to excessive force" language? And if Burns is expected to take that approach, how does that not just result in every absent class member running to "fil[e] their own protective lawsuits"? *Monroe* 980 F Supp 2d at 491-492.

### C. The R&R improperly read ambiguities in the *Sow* FAC against Plaintiff.

*Olukayode* also went too far in taking some indications in the complaint to run its gloss on the Proposed Class. *See generally, Olukayode*, 837 F Supp 3d at 520-522. *Olukayode* began its analysis by noting that it believed the document was ambiguous: It acknowledged "the proposed class definition[,] read literally and in isolation, would encompass anyone 'targeted for' First Amendment activity during the New York City BLM protests during the specified time period." *Olukayode*, 837 F Supp 3d at 521-522. And it acknowledges "there are allegations in the pleading there that NYPD officers used excessive force against protesters that did not result in arrests." *Id.* But it says that other parts of the pleading call that plain language into question, and uses those to resolve the ambiguity.[6]

[6] *Olukayode*'s claim that "police" in the *Sow* FAC necessarily meant "certain law enforcement entities within New York" (*id.* at 525-26) despite the fact that the complaint begins "[o]n May 25, 2020, ***police*** killed George Floyd" (*Sow* FAC ¶ 1 (emphasis added)) at least calls into question whether it had the right general understanding of the document.

But in taking a view of the complaint that picked some aspects as dispositive, but disregarded those that suggested that opposite — rejecting those parts of the *Sow* FAC that supported a different view as "inconsistent with the balance of the pleading" (*id.* at 522) — *Olukayode* improperly resolved an ambiguity in a document at the motion to dismiss stage. The question at this stage, particularly when the parole evidence reading is attempting to work *against* the "literal[]" text (*Olukayode*, 837 F Supp 3d at 521-522, is whether there is "sufficient ambiguity … to preclude granting a motion to dismiss the Amended Complaint." *Karmely v Wertheimer*, 737 F3d 197, 203 (2d Cir 2013) (reversing decision resolving ambiguity on a motion to dismiss).

At the motion to dismiss stage, the Court is required to resolve any "ambiguities" in a text "in favor of the plaintiff." *Subaru Distribs. Corp. v Subaru of Am., Inc.*, 425 F3d 119, 122 (2d Cir 2005). To be sure, the arguments the R&R adopted from *Olukayode* might have some force in front of a fact-finder — or on a summary judgment record that demonstrates that those understandings were shared by the *Sow* parties. But at this stage, the R&R erred in construing what it acknowledged was an ambiguous document against Plaintiffs.

**D. The R&R improperly resolved fact disputes.**

The R&R also — at least implicitly — relied on *Olukayode*'s conclusion that allowing these two claims would be an "unfair surprise to defendants." *Olukayode*, 837 F Supp 3d at 523. It also did not analyze, let alone provide any basis to say there was no fact dispute, over the fact that the drafters of the *Sow* FAC specifically submitted that they intended to include force-only claims in the proposed class. *See, e.g.,* ECF No. 36 at 13. To the extent this drove the decision, it resolved fact disputes at the wrong stage.

To be sure, when a definition can be resolved by reference to the text alone, that is a purely legal issue. But when looking to facts outside the definition to clarify it, those facts generally not resolvable on a motion to dismiss. *See above, see also, e.g., Alumax, Inc. v Pechiney S.A.*, 1992 US Dist

LEXIS 12348, at *6 (SDNY Aug. 17, 1992). Here, at most, the R&R (through *Olukayode*) identified some good reasons the City parties to *Sow* might have read an ambiguous document in a different direction than the plaintiffs there. But it resolved a fact issue in finding that the City parties *in fact* had that understanding — and that the plaintiffs in *Sow* could not have meant the *Sow* FAC to have its literal meaning of including force-only (or, for that matter, seizure/detention-without-custodial-arrest) members of its proposed class.

There are relevant documents and facts that bear on this question. To start, while it has not been filed (for obvious reasons), it would obviously be ***quite*** relevant to see the opening settlement demand and responses — exchanged within the statute of limitations — to see how the City and the *Sow* Plaintiffs understood the language.

There are also other communications among the parties, assessments to the Comptroller by the City's lawyers, internal discussions with descriptions of what everyone understood the proposed class was, and the like. Some of this may be privileged, there may be advice of counsel defense issues, and the like. And there may be complex questions about the admissibility of settlement discussions. But all these issues are things to be resolved through discovery and motion practice — they do not mean there are not fact issues. And if the Court — as it needed to reach the result it did in the R&R — finds that there is some ambiguity in the definition, then there needs to be at least some discovery on parole evidence to explore that ambiguity.

## CONCLUSION

For all the reasons discussed above, Plaintiffs respectfully request that the Court reject the R&R insofar as it recommends dismissal of the RD Plaintiffs' claims.

Dated: November 16, 2026
Queens, New York

Respectfully submitted,

**BELDOCK LEVINE & HOFFMAN LLP**

By: ______________________
Jonathan C. Moore
David B. Rankin

99 Park Avenue, PH/26th Floor
New York, New York 10016
t: 212-490-0400
f: 212-277-5880
e: jmoore@blhny.com
drankin@blhny.com
oclark@blhny.com

**WYLIE STECKLOW PLLC**

By: ______________________
Wylie Stecklow
Wylie Stecklow PLLC
Carnegie Hall Tower
152 W. 57th Street, 8th Floor
NYC NY 10019
t: 212 566 8000
Ecf@wylielaw.com

**GIDEON ORION OLIVER**

______________________
277 Broadway, Suite 1501
New York, NY 10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com

**COHEN&GREEN P.L.L.C.**

By: ______________________
Elena L. Cohen
J. Remy Green

1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
t: (929) 888-9480
f: (929) 888-9457
e: elena@femmelaw.com
remy@femmelaw.com